IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. |
| TUCKER INN INCORPORATED, | ) | |
| d/b/a, SUPER 8 BY WYNDHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT FOR DAMAGES**

## <u>TABLE OF CONTENTS</u>

**A.** Parties, Jurisdiction, & Venue …………………………………………7

**B.** Plaintiff's Minor Sex Trafficking at the Super 8…………………………..8

**C.** Defendant's Knowledge of Prior Crime at the Super 8………………..16

**D.** Defendant's Knowledge of Sex Trafficking Generally…………………..27

COUNT I-Statutory Liability 18 U.S.C. § 1595……………………………..35

COUNT II- Nuisance………………………………………………………...38

DAMAGES………………………………………………………………..40

COMES NOW Plaintiff, D.H., in the above-styled action and hereby files her Complaint as follows:

1.

When she was 15 years old, Plaintiff was trafficked for sex at the Super 8, located at 1600 Crescent Centre Blvd., Tucker, Georgia, 30084 (the "Super 8") in and around September 2015.  Plaintiff is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel will disclose her full name to defense counsel as soon as they are known or as soon as an appropriate protective order is in place.[1]

2.

At all times relevant to this Complaint, Plaintiff was a minor child and victim of sex trafficking at Defendant's hotel.

3.

At all relevant times, Defendant Tucker Inn Incorporated owned, controlled, operated, managed, and directly employed the staff at the Super 8.

---

[1] Contemporaneously with this Complaint, Plaintiff has filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of Plaintiff, a minor child, and are intimate and personal in nature, as well as for her own personal safety.

4.

Defendant knew of the rampant sex trafficking and prostitution at the hotel for years, before, during, and after Plaintiff's trafficking. Defendant knew because:

a.    the facts of this specific Plaintiff while she was trafficked for sex as a minor child at the hotel;

b.    its employees knew of and permitted sex trafficking and prostitution to occur at the hotel;

c.    the facts of multiple other sex trafficking victims at the hotel before, during, and after Plaintiff;

d.    the frequent and ongoing similar crime occurring at the hotel;

e.    the reports of hotel guests to Defendant regarding sex trafficking and prostitution-related activities;

f.    Defendant's knowledge of sex trafficking generally, in the Atlanta area, and at this location specifically.

5.

A person under the age of 18 cannot consent to having sex in exchange for money.  Any commercial sex involving a person under eighteen (i.e. "minor sex trafficking") is *criminal* sex trafficking under federal and Georgia law whether the minor had a trafficker/pimp and does not require evidence that the victim was subject to "force, fraud, or coercion."  18 U.S.C. § 1591(a); O.C.G.A. § 16-5-46(8)(B). Every person who engages in commercial sex with a minor is trafficking that minor under 18 U.S.C. § 1591(a)(1).

6.

Sex trafficking and prostitution were common occurrences at the Super 8 and Defendant chose to ignore, allow, condone, facilitate, support, and/or permit such activity at the Super 8.  Defendant is liable to Plaintiff for its actions and failures to act.  Defendant's liability to Plaintiff is straightforward:

   a) The Trafficking Victims Protection Reauthorization Act ("TVPRA"),
      18 U.S.C. § 1595(a), provides a cause of action to victims of sex
      trafficking against "whoever knowingly benefits, financially or by
      receiving anything of value from participation in a venture which that
      person ***knew or should have known*** has engaged in an act in violation
      of" the TVPRA.  Defendants knowingly benefited from participation in

a venture which they knew or should have known engaged in an act in violation of the TVPRA because they (i) rented the rooms at the Super 8 to Plaintiff's trafficker, in which Plaintiff, a 15-year-old girl, was sold for sex at the hotel; (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that they knew or should have known that Plaintiff was a victim of sex trafficking at the hotel. As such, Defendant is liable to Plaintiff for her damages under the TVPRA.

b) The Super 8 constituted a nuisance under Georgia law because the hotel negligently turned a blind eye and permitted illegal activities to occur at the hotel, including rampant prostitution, crimes against women, dangerous illegal activity, drugs, violence, harboring missing and runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking. As a direct result of this nuisance, Plaintiff was sold for sex at the Super 8, causing her substantial harm.

7.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation is that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or

representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant and the Super 8.

## A.    Parties, Jurisdiction, and Venue

8.

Plaintiff is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court. Plaintiff was born in November of 1999 and was a minor at the time of her sex trafficking as alleged herein.

9.

At all times relevant to this Complaint, Defendant owned, managed, supervised, operated, oversaw, controlled the operation of, and was inextricably connected to the renting of rooms at the Super 8, from which it benefited financially.

10.

Defendant Tucker Inn Incorporated is a Georgia corporation with its principal place of business in Tucker, Georgia. It regularly conducts business in the State of Georgia, derives substantial revenue from services rendered in Georgia, and has committed tortious acts or omissions both within and outside Georgia, resulting in injuries in Georgia. Defendant may be served with process by serving

its registered agent Vinay Patel, 1600 Crescent Center Blvd., Tucker, Georgia, 30084.

11.

Jurisdiction and venue are proper as to Defendant, and Defendant was properly served with process in this action.

12.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because D.H. asserts claims arising under 18 U.S.C. 1595(a), and, pursuant to 28 U.S.C. § 1367, because D.H. 's state law claims form part of the same case as her federal law claims.

13.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents forming the basis of this complaint occurred in DeKalb County, Georgia, within the Northern District of Georgia, Atlanta Division.

## B.    Plaintiff's Minor Sex Trafficking at the Super 8

14.

Plaintiff, a 15-year-old minor at the time, was trafficked for sex over the course of several days at the Super 8 in September 2015. Plaintiff was rescued from the hotel by the police, who later arrested Plaintiff's trafficker and charged

8

her with trafficking for sexual servitude. Additionally, a buyer was found guilty of raping the minor Plaintiff at the Super 8 on September 7, 2015.

15.

When Plaintiff was trafficked at the Super 8, she witnessed more than ten other sex traffickers operating openly and brazenly at the hotel.

16.

During Plaintiff's child sex trafficking at the Super 8, she witnessed other women and children being sold for sex at the hotel. These women and children wore lingerie and skimpy clothing throughout the hotel and parking lot and there was a constant stream of traffic throughout the day of men with no luggage visiting the hotel rooms of these women and children for short periods of time before leaving and being followed by other anonymous men.

17.

When Plaintiff was trafficked at the Super 8, she witnessed at least 20 other victims being trafficked for sex at the hotel.  As a result, a large number of buyers frequented the hotel each day. Plaintiff estimates that the Super 8 accommodated 100 or more buyers each day.

18.

Plaintiff and other young sex trafficking victims frequently appeared throughout the hotel and on the hotel premises and approaches wearing very little clothing. Often, these women and children could be seen loitering on the balcony and walking back to the hotel late at night.

19.

Plaintiff heard other victims of sex trafficking screaming through the walls of the Super 8. Defendant's employees should have heard these screams as well and should have known that this was a sign of minor sex trafficking at the hotel.

20.

On or about September 2, 2015, Plaintiff's trafficker took Plaintiff to the Super 8, where the trafficker kept two rooms rented—215 and 217.

21.

Plaintiff observed much of the sex trafficking activity at the Super 8 happening on the back side of the hotel where it appeared Defendant rented room to traffickers, suspected prostitutes, and sex trafficking victims.

22.

Rooms 215 and 217 were also located on the back side of the hotel, in the corner of the building.

23.

While Plaintiff was trafficked at the Super 8, she was made to have sex with as many as 20 older men each day. Defendant knew or should have known that the number of daily, older male visitors to the room was clearly indicative of sex trafficking and child sex trafficking.

24.

At times when Plaintiff's room was being used by her trafficker, the 15-year-old would wander around the hotel and often visited the lobby of the hotel, interacting with front desk employees, who knew or should have known from her appearance and actions that Plaintiff was a victim of minor of sex trafficking occurring at the Super 8.

25.

While Plaintiff was trafficked for sex at the Super 8, she exhibited numerous well-known and visible signs of a child sex trafficking victim, of which Defendant knew or should have known, including her young age and inappropriate appearance, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, loitering, soliciting male patrons, and monitoring and control of Plaintiff by her trafficker.

26.

A police officer testified that Plaintiff "was definitely younger and younger looking than any of the other girls" at the Super 8.

27.

Plaintiff and her trafficker regularly interacted with Defendant's employees, agents, and representatives during the time period in which Plaintiff was trafficked at the Super 8.

28.

Plaintiff and her trafficker interacted with front desk employees daily. Plaintiff's trafficker paid cash received from Plaintiff's trafficking for an additional day every day at the Super 8. Plaintiff and her trafficker both requested a large number of towels daily from the front desk. Defendant knew or should have known that these were additional signs of sex trafficking.

29.

While walking around the Super 8 with her trafficker, Plaintiff kept her head down in a subservient manner. Defendant knew or should have known this is a well-known and visible sign of a child sex trafficking victim.

30.

Once, a front desk employee at the Super 8 confronted Plaintiff and asked if she was ok. Although Plaintiff told the employee that she was not, the employee did nothing.

31.

While trafficked at the Super 8, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendant knew or should have known. Frequently, the trash cans in the rooms in which Plaintiff was trafficked contained an extraordinary number of used condoms and condom wrappers, multiple large boxes of condoms, and an excessive number of towels received from the front desk employees.

32.

Room 217 did not contain any personal belongings at all. Instead, the room was used only to sell the 15-year-old child for sex. As such, that room only contained items indicative of sex trafficking and prostitution, including Trojan and Magnum condoms, a bottle of sex lube, assorted underwear, and a pink and black negligee top.

33.

Some of the contents of rooms 215 and 217 are shown in the pictures below, taken on the day of Plaintiff's rescue. During the cleaning of the room, Defendant knew or should have known these items were obviously indicative of the fact that the 15-year-old child in the room was being sold for sex.











## C.    Defendant's Knowledge of Prior Crime at the Super 8

34.

The Super 8 and its approaches were well known for crime, prostitution, and sex trafficking.

35.

Defendant directly operated the Super 8 and employed the employees at the Super 8 for more than 20 years, giving it specific and direct knowledge of prior and ongoing crime, including prostitution and sex trafficking occurring at the hotel during that time period.

16

36.

Prior to Plaintiff's minor sex trafficking at Super 8, prostitution, sex trafficking, and child sex trafficking were rampant and frequent occurrences at the hotel, obvious to employees and guests.

37.

In 2013, another minor was trafficked for sex at the Super 8 when she was just 14 years old. This minor frequently walked around the hotel and surrounding area to advertise herself. In her frequent interactions with hotel staff, she also exhibited clear outward signs of a minor sex trafficking victim.

38.

Between 2011 and 2013, another minor was trafficked for sex at the Super 8 when she was about 14-15 years old. This minor was forced to see five or more adult buyers each day she was trafficked at the Super 8.

39.

This victim witnessed at least four other young victims being sold for sex in an open and obvious manner out of the Super 8 each time she was trafficked at the Super 8.

40.

At the time of, and prior to, Plaintiff's child sex trafficking at the Super 8, hotel employees knew crime, including prostitution and sex trafficking, was open and obvious at the Super 8.

41.

Defendant allowed, condoned, facilitated, and/or ignored the widespread prostitution and sex trafficking at the Super 8, including Plaintiff's child sex trafficking.

42.

Defendant provided a market and beds for sex traffickers to sell women, boys, and girls—including children—to buyers of commercial sex. That is why Plaintiff's sex trafficker brought her to the Super 8 to be sold for sex.

43.

Prior to Plaintiff's child sex trafficking at the Super 8, patrons frequently saw women who were being sold for sex at the hotel loitering outside, soliciting men for sex, and observed the heavy foot traffic surrounding the rooms where sex and drugs were being sold at the hotel.

44.

The hotel employed minimal staff at the time of, and prior to, Plaintiff's child sex trafficking at the hotel. The hotel failed to employ security guards to patrol the premises and protect patrons.

45.

Defendant knew or should have known of other sex crimes at the hotel before, during, and after Plaintiff's child sex trafficking. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of the following *sex* crimes, among others, occurring on their premises and approaches:

a.  On or about March 16, 2011, police conducted an undercover prostitution operation. A woman was arrested for **prostitution** at the Super 8.

b.  On or about October 14, 2011, police conducted a prostitution sting at the Super 8. A woman was arrested for **prostitution**.

c.  On or about July 11, 2013, police conduct a prostitution reversal operation at the Super 8. A man was arrested for **loitering for sex**.

d.   On or about October 23, 2013, police conducted an undercover

prostitution operation. A woman was arrested for **prostitution** at the

Super 8.

e.   On or about December 12, 2013, a man was arrested for **keeping a**

**place of prostitution** and **prostitution** at the Super 8.

f.   On or about December 29, 2013, a man was cited for **loitering for sex**

at the Super 8.

g.   On or about April 16, 2014, police conducted a police operation

targeting females that engage in acts of prostitution. As a result of this

operation, a woman was arrested for **keeping a place of prostitution**

and **prostitution** at the Super 8.

h.   On or about October 1, 2014, police conducted a pandering operation

at the Super 8. A man was arrested for **loitering for sex**.

i.   On the same day, police conducted an undercover operation in

reference to citizen complaints of prostitution taking place in the area.

As a result of this operation, a woman was arrested for **prostitution** at

the Super 8.

j.  On or about January 2, 2015, police located a minivan with
unattended minors in it at the Super 8.  A woman, later identified as
their mother, was cited for **prostitution** at Super 8.

k.  On or about May 7, 2015, police conducted a **pandering** operation at
the Super 8, and a man was arrested after having requested sex from
two undercover female officers.

l.  On the same day, a second man was arrested after having **solicited**
two undercover female officers for sex at the hotel.

m.  On or about May 8, 2015, police conducted a pandering operation at
the Super 8 and arrested a man who **solicited** an undercover female
officer for sex.

n.  On the same day, another man was arrested after having **solicited** sex
from two undercover female officers.

o.  Again, on or about May 8, 2015, a third man was arrested after having
**solicited** sex from an undercover female officer.

p.  Finally, on or about May 8, 2015, police arrested a fourth man at the
Super 8 who **solicited** two undercover female officers.

q.  On or about May 13, 2015, a woman solicited a plain clothes officer for sex at the Super 8 and was arrested for **pandering**.  The woman was ordered to stay away from the Super 8.

r.  On or about June 2, 2015, a man was arrested at the Super 8 for impersonating a police officer after he entered the room of known **prostitute**.

s.  On or about June 10, 2015, a man was arrested for possession of narcotics at the Super 8 after he was observed transporting several women between the Super 8 and another hotel for the purposes of **prostitution**.

t.  On or about June 2015, a man reported being **solicited** for sex by three men and a woman at the Super 8.  During this interaction, the man alleged his cell phone was stolen from his hotel room.

46.

The list of criminal conduct set forth in the foregoing paragraph only skims the surface of the pervasive crime generally, and sex trafficking and prostitution specifically, occurring at the Super 8 before Plaintiff was trafficked there as a child.  The foregoing paragraph merely illustrates some of the rampant crimes, including prostitution and sex trafficking, occurring at the Super 8 about which

Defendant knew or should have known. The full police record relating to the Super 8—about which Defendants knew or should have known under multiple Dekalb County Municipal Codes—is publicly available in voluminous police reports, among other places.[2]

47.

Defendant knew or should have known of sex trafficking, prostitution, and other criminal activity existing at the Super 8 prior to Plaintiff's sex trafficking there.

48.

Defendant had actual and constructive knowledge of prostitution, sex trafficking, and other criminal activity existing on the property and in the surrounding area prior to Plaintiff's sex trafficking. Defendant knew or should

---

[2] The Dekalb County Municipal Code provides, in relevant part: "Annually, the county shall provide every owner, operator, keeper or proprietor of any hotel, motel, or extended-stay hotel with a list of crimes and ordinance violations that occurred on the property in the previous year." Sec. 18-136(g). Further: "Every owner, operator, keeper or proprietor of any hotel, motel, or extended-stay hotel shall, without delay, report violations of law to the DeKalb County Police Department that were either witnessed or made known to them by an employee, patron, guest, visitor or other person on the premises." Sec. 18-136(a). Likewise, "[e]very owner, operator, keeper or proprietor of any hotel, motel, or extended-stay hotel shall, at all times, maintain a manager on duty capable of assisting, communicating, and cooperating with the police or other law enforcement officials in maintaining the public health, welfare, and safety." Sec. 18-136(b).

have known of these and other violent crimes occurring on their premises and

approaches.

49.

For example, on January 8, 2012, a man was found murdered in Room 115

at the Super 8 as part of a gang initiation after he was assaulted so badly that he

could not initially be identified by police as a man or a woman. Three members of

the Bloods street gang were subsequently arrested and sentenced to life in prison.

Defendant knew or should have known of this and other gang related incidents.

50.

Defendant had actual or constructive knowledge of publicly available online

reviews of the Super 8 reporting prostitution and crime occurring at the hotel,

including the following:

(i)     September 20, 2010, from booking.com:

**Horrible Hotel**

"This hotel is horrible. [. . .] Shady characters were hanging around.
Was in the area for business, but will never stay here again.  Filthy!"

(ii)    July 7, 2010, from booking.com:

**No place for families**

"Rooms were smelly and the carpets looked dirty.  Then we witnessed
what appeared to be illegal activities and seedy characters loitering

about the place.  It got to the point that I was afraid for my children to be outside the room and my children felt the need to barricade the door before they would even attempt to go to sleep.  We cut our stay short by one day because none of us wanted to stay another night in this establishment."

(iii)    June 22, 2011, from booking.com:

**Not a place that I would reccomend.**

"The first night I felt like I needed to carry some sort of weapon so I wouldn't get jumped.  We seem three prostitutes before we even parked on the first night.  Second night a man staying there asked if we wanted some marijuana.  Not a place for kids at all.  Wouldn't recommend unless you are tight on cash and don't care where you stay."

(iv)    April 2013 from TripAdvisor:

**Hotel was not as appeared online.  Safety and Security was a…**

"Hotel was not as appeared online.  Safety and security was a concern outside."

(v)    July 29, 2014, from booking.com:

**Watch your back.**

"The hotel was muggy and the neighborhood was sketchy.  Bring your sidearm or pay an extra 20 bucks to get a better hotel.  Never again."

(vi)    May 13, 2014, from booking.com:

**We listened to a prostitute next door all night lo**

"We spent the night lying awake listening to the men coming and going out of the prostitutes room (213) next door.  During their stay

we covered our ears to protect our minds and imaginations from the discussing and frightening noises that we were hearing.  It was utterly repulsive and excruciating.  We left at 5:30 am after having slept less than 2 hours to drive the 12 hour trip home.  It was the most horrible hotel experience of my life."

(vii)   <u>July 2014 from TripAdvisor:</u>

**Wish I could rate lower… ReThink this Dump!!!**

"We booked 2 rooms for a night stay on our way to Florida.  Worst mistake ever!!!  The place and area is so run down and scary.  Thinking we would just get our money back and move on we find a big sign in the lobby that says NO REFUNDS.  Wony why??? Let me tell ya…local drug dealer in on the property 24/7.  Lady of the night hangs out right in front.  Owner/manager is very rude.  I walked down to a vending machine only to find out they don't work…but…I did get propositioned.  We travel A Lot…and I can honestly say this was the dirtiest, most run down scary place we have ever stayed!!!  Do not say here if avoidable!!!"

(viii)  <u>July 2015 from TripAdvisor:</u>

**Dirty room**

"I would not recommend this facility unless you are ok with a dirty room and unsavory characters running around."

(ix)    <u>January 25, 2015, from booking.com:</u>

**Iffy**

"It was close to the road so it was noisy (to be expected).  On Saturday night, there were many shady characters hanging around in the parking lot.  Not for families or single females traveling alone on the weekend."

51.

Defendant knew or should have known that these and other customer reports

showing the dangerous nuisance of the property and the rampant crime that

occurred on the premises.

**D.    Defendant's Knowledge of Sex Trafficking Generally**

52.

Defendant knew or should have known of the existence of sex trafficking

and its illegality more than 20 years ago, since the passage of the Trafficking

Victims Protection Act in 2000, and the United Nations' adoption of the Palermo

Protocol, to prevent, suppress, and punish trafficking in persons.

53.

Defendant knew or should have known that during the relevant period

Atlanta was a national hub of sex trafficking and that the crime was prevalent in

the city, including at the Super 8. According to a well-publicized study

commissioned by the U.S. Department of Justice, Atlanta had one of the largest

illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking

economy was worth $290 million annually, and traffickers reported average *weekly*

earnings of roughly $33,000.[3]  Over the last two decades, sex trafficking has

generated billions of dollars in illicit profits in metro Atlanta alone.  Defendant has

received and retained some of those illicit profits through renting hotel rooms used

for the trafficking of Plaintiff and other minors.

54.

Defendant knew or should have known of the Atlanta area's well-publicized

reputation as an "epicenter for human trafficking, [] particularly child sex

trafficking,"[4] and as "the number one city for child sex trafficking."[5]

55.

Defendant knew or should have known that hotels and motels are "a

particularly attractive site for criminal activity ranging from drug dealing and

---

[3] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta
Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--
law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/
(last visited April 1, 2021); *see also* Meredith Dank, et.al, *Estimating the Size and
Structure of the Underground Commercial Sex Economy in Eight Major US Cities*,
Urban Institute, (March 12, 2014), 30-32, *available at*
https://www.urban.org/research/publication/estimating-size-and-structure-
underground-commercial-sex-economy-eight-major-us-cities (last visited April 1,
2021).
[4] Sally Yates, Remarks at Justice Department Event Marking National Slavery and
Human Trafficking Prevention Month, (Jan. 29, 2015), *available at*
https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-
yates-delivers-remarks-justice-department (last visited April 1, 2021).
[5] *Id.*

prostitution to human trafficking.  Offering privacy and anonymity on the cheap,

they have been employed as . . . rendezvous sites where child sex workers meet

their clients on threat of violence from their procurers[.]"  *City of Los Angeles v.*

*Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice

Roberts and Justice Thomas).

56.

Defendant knew or should have known the following: The National Human

Trafficking Hotline has reported that ninety-two percent of the calls it received

involving hotels and motels reported sex trafficking, and another two percent

reported a combination of sex and labor trafficking.[6] A 2012 study found that 63

percent of trafficking incidents occurred in hotels.[7] And the Polaris Project found

that "75% of [trafficking] survivors responding to Polaris's survey reported

coming into contact with hotels at some point during their exploitation . . . .

---

[6] *Human Trafficking and Hotels & Motels*, Polaris Project,
https://polarisproject.org/human-trafficking-and-hotels-motels/ (last visited April
1, 2021).
[7] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2,
Businesses Ending Slavery and Trafficking, (July 2014),
https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11
_without_appendix.pdf at 5 (last visited April 1, 2021).

Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."

57.

Defendant knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human trafficking arrests occur in or around hotels,[8] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[9]

58.

Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[10]

---

[8] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[9] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6 (last visited April 1, 2021).

[10] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited April 1, 2021).

59.

Defendant knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to identify, address, and deter sex trafficking, identifies six reasonable and logical steps hotels and motels can take:

a.  establish corporate policy and procedures against sexual exploitation of children;

b.  train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c.  include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d.  provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e.  support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f.  report annually on the company's implementation of Code-related activities.

60.

Defendant knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to address the scourge of sex trafficking at hotels.

61.

Defendant knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and respond to human trafficking.  DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room;

h.  excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i.  the same person reserves multiple rooms;

j.  a room is rented hourly, less than a day, or for an atypical extended stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer)

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

62.

Defendant knew or should have known that, on September 15, 2013, the

Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex

trafficking notices "in each public restroom for the business or establishment and

either in a conspicuous place near the public entrance of the business or

establishment or in another conspicuous location in clear view of the public and

employees where similar notices are customarily posted."  The contents of the

notice are prescribed by statute but must "provide information giving individuals a

method to contact the National Human Trafficking Hotline and the Statewide

Georgia Hotline for Domestic Minor Trafficking."  Failure to comply with

O.C.G.A. § 16-5-47 is a misdemeanor. On information and belief, Defendant did

not comply with this statute.

63.

Without a market—a conveniently located and anonymous place to confine

humans, exchange money, and have sex—sex trafficking would cease to exist. In

Plaintiff's case, Super 8, for a fee, provided this market for the 15-year-old to be

confined and sold.

## <u>COUNT I</u>
## <u>STATUTORY LIABILITY 18 U.S.C. § 1595</u>

64.

Plaintiff incorporates the paragraphs 1 through 63 above, as if fully set forth herein.

65.

In violation of the TVPRA, Defendant knowingly benefitted from participation in a venture that Defendant knew or should have known violated the TVPRA.

66.

Defendant knowingly benefitted from Plaintiff's sex trafficking by receiving revenue generated from the hotel rooms from which Plaintiff was trafficked.

67.

Defendant participated in a venture by knowingly owning and operating a hotel that generated revenue through room rentals, and Defendant knew or should have known that its hotel rooms were being used by sex traffickers for the purpose of trafficking victims for sex in violation of the TVPRA.

68.

Defendant knew or should have known that renting its rooms to Plaintiff's sex trafficker violated the TVPRA.

69.

Defendant participated in a venture by operating the Super 8 in such a manner that the hotel allowed sex trafficking to occur so that it could profit from the room revenue the illegal activity generated.

70.

Defendant knew or should have known that its operation of the hotel harbored victims of sex trafficking, including Plaintiff, in violation of the TVPRA.

71.

Defendant participated in a venture by associating with, and renting rooms to, Plaintiff's sex trafficker at the Super 8, providing Plaintiff's trafficker with the necessary venue for Plaintiff's sex trafficking, despite the fact that Defendant knew or should have known Plaintiff's sex trafficker was trafficking Plaintiff for sex at the hotel.

72.

Defendant knew or should have known that its association with, and renting rooms to, Plaintiff's sex trafficker violated the TVPRA.

73.

In the course of these ventures, numerous buyers paid to have sex with Plaintiff in Defendant's hotel rooms.

74.

The ventures in which Defendant participated were in or affecting interstate commerce.

75.

Defendant knew or should have known the ventures violated the TVPRA because Defendant and its agents and representatives had the opportunity to observe Plaintiff at the hotel, with and without her trafficker, the signs of sex trafficking exhibited by Plaintiff, her trafficker, their rooms and the frequent traffic of adult male buyers to Plaintiff's hotel rooms.

76.

Defendant is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its agents and representatives.

77.

Plaintiff has suffered physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this venture.

78.

Defendant is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

79.

Defendant is jointly and severally liable for damages arising from the indivisible injuries it caused to Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II – NUISANCE

80.

Plaintiff incorporates the paragraphs 1 through 79 above, as if fully set forth herein.

81.

The operation of the Super 8 hotel constituted a public nuisance under Georgia law because the hotel negligently turned a blind-eye and permitted illegal activities to occur at the hotel including prostitution, crimes against women, dangerous illegal activity, drugs, violence, sex crimes, and sex trafficking.

82.

Defendant was operating a nuisance hotel. Although hotels are ordinarily legal, the operation, control, and activity of this hotel was being conducted in such a manner as to permit and allow illegal activity to occur at the hotel, thereby creating a nuisance.

83.

Defendant's nuisance hotel had an appreciable blighting effect on the surrounding community, and had a tendency to breed crime and debauch the morals of the community.

84.

Plaintiff was trafficked at this nuisance hotel because of its notoriety as a place that permitted child sex trafficking and was accommodating to sex traffickers.

85.

Thus, as a direct result of this hotel being a nuisance, Plaintiff was sold for sex and raped at this hotel, was harmed and incurred damages because of same. Everyone who came into contact with the sex trafficking at the hotel was harmed as a result.

86.

Defendant is liable for all damages arising under Georgia law as a result of this nuisance and the harm caused to Plaintiff.

## **DAMAGES**

87.

Plaintiff incorporates paragraphs 1 through 86 as if fully set forth herein.

88.

As a proximate and foreseeable result of Defendant's violations of the TVPRA and Georgia law, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

a)    Personal injuries;

b)    Past, present and future conscious pain and suffering;

c)      Loss of enjoyment of life;

d)      Medical expenses;

e)      Mental anguish and emotional distress;

f)      Loss of past, present, and future wages;

g)      Incidental expenses;

h)      All special, compensatory, economic, punitive, and other damages

permissible under Georgia law; and

i)      Consequential damages to be proven at trial.

89.

Plaintiff is entitled to an award of punitive damages without limitation or

cap because the actions of Defendant and its employees were willful and wanton

and showed an entire want of care, which raises the presumption of a conscious

indifference to consequences.

90.

Defendant's actions evidence a species of bad faith, were and are stubbornly

litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to

recover her necessary expenses of litigation, including an award of reasonable

attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-

68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all

expenses of litigation and attorneys' fees pursuant to all other Georgia statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendant for the following:

a)  Process issue as provided by law;

b)  Plaintiff be awarded actual damages in amounts to be shown at trial from Defendant;

c)  Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

d)  Plaintiff be awarded a trial by jury; and

e)  Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 24th day of August, 2022.

Respectfully submitted,

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough

Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680