## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| E.M.,<br><br>　　Plaintiff,<br><br>　　　　　v.<br><br>TUCKER INN INC.,<br>*d/b/a* America's Best Value Inn,<br><br>　　Defendant. | CIVIL ACTION FILE NO.<br>1:22-cv-02559-WMR |

## ORDER

Before the Court is Defendant Tucker Inn Inc.'s ("Defendant") Motion for Summary Judgment, [Doc. 95], which came before the Court for a hearing on May 13, 2024 (the "Hearing"). For the reasons stated herein, the Court **DENIES** the Motion.

### I.　　Statement of Facts

Plaintiff E.M. ("Plaintiff") brings claims against Defendant for violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591, *et seq.*, and state law public nuisance.[1] These claims arise out of events that

---

[1] Although Plaintiff does not specify in her Complaint, Plaintiff's counsel clarified at the Hearing that she is suing for public nuisance rather than private nuisance. [Doc. 1 at 36–37]; [Doc. 153 at 71].

1

occurred in June 2017 when, at 16 years old, Plaintiff was trafficked for sex at America's Best Value Inn (hereinafter "ABVI" or "the hotel"). [Doc. 139 at 1]. Defendant, through its owner and manager, Umesh Patel ("Mr. Patel"), has owned and operated the hotel at all times relevant to this case. [*Id.* at 2, 4].

On June 7, 2017, Plaintiff went to ABVI with her trafficker, Tremaine D. Johnson (hereinafter "Johnson" or "Plaintiff's trafficker"), after a friend told her that there "was a lot of traffic there" and that Plaintiff "could make money there." [Doc. 139 at 2–3]; [Doc. 122-2 at 3]. Upon arrival, Johnson waited outside while Plaintiff checked into the hotel. [Doc. 121 at 6]. The hotel's policy required guests to be at least 20 years old and to present an I.D. or driver's license to rent a room. [*Id.* at 7]. And, when checking into the hotel, Plaintiff presented what appeared to be a Georgia driver's license belonging to a woman named Chaviante Bledsoe, who was born in 1991 and would have been 26 years old at the time. [*Id.* at 6]; [Doc. 139 at 4]. Plaintiff paid for the room with cash, and Defendant assigned her room 215, which is located on the back side of the hotel. [Doc. 139 at 4].

Plaintiff and her trafficker stayed at the hotel for two days. [Doc. 121 at 7–8]. Each day, Plaintiff went to the lobby and paid for the room with cash. [*Id.*]. During her two days at the hotel, Plaintiff saw five "dates" on the first day and more on the second day. [*Id.* at 10]. Johnson would wait outside the hotel room while Plaintiff saw dates, and as soon as the buyer would leave, Johnson would immediately reenter

the room. [Doc. 139 at 19–20]. During her stay, housekeeping brought towels to Plaintiff's room, and Plaintiff spent time with her friend, T.W., who was also staying at the hotel and walked to a nearby gas station. [*Id.* at 5]; [Doc. 121 at 11]. Although the evidence is disputed on this point, there is testimony that Plaintiff and other girls would openly walk past the hotel's front office in tight clothes and makeup. [Doc. 139 at 6]. On June 9, 2017, undercover police officers conducted a prostitution sting on Plaintiff at the hotel, and she was thereafter taken into custody and placed with child services. [Doc. 121 at 14–15]. Johnson was arrested and charged with trafficking a person for sexual servitude and later pled guilty to pimping for persons under 18. [*Id.* at 15].

Most of the remaining evidence, which pertains to Defendant's operation of the hotel and knowledge of commercial sex activity there, is in dispute. As to Defendant's knowledge of prostitution and trafficking at the hotel, Plaintiff testified that all the activity could be seen on the surveillance cameras located around the hotel and that the activity was open and obvious. [Doc. 139 at 8]. It is undisputed, however, that surveillance footage from June 8, 2017, captured at least three anonymous men entering Plaintiff's hotel room for 20 to 30 minutes before leaving. [*Id.* at 10]. The surveillance footage also captured Johnson entering the room a few minutes afterwards each time coming from a nearby stairwell. [*Id.*].

3

There is also evidence of rampant commercial sex activity occurring at the hotel over the years. For example, Plaintiff presents evidence of at least 19 different arrests that occurred at the hotel for sexual-related offenses between 2011 and 2017. [*Id.* at 35–45]. Additionally, a prostitute who claims to have worked at the hotel from 2012 through 2022 testified that there were around 20 girls who were engaged in commercial sex at the hotel each day. [Doc. 122-5 at 2–3]. Customers left reviews online about prostitution occurring at the hotel, but the parties dispute whether Mr. Patel read these reviews. [Doc. 139 at 30]. It is undisputed that Mr. Patel was aware, however, that Dekalb County Police conducted prostitution stings at the hotel before Plaintiff was trafficked. [*Id.* at 29].

As it relates specifically to Defendant's involvement, there is testimony that Defendant waited to take payment from girls being sold for sex until they raised money by selling sex at the hotel each day. [*Id.* at 48]. There is also testimony that Defendant assigned sex trafficking victims rooms on the backside of the hotel and that sex trafficking activities occurred on the backside of the hotel [*Id.* at 4, 18, 20, 53, 72].

Defendant now moves for summary judgment as to Plaintiff's TVPRA claim, public nuisance claim, and requests for punitive damages and attorney fees. *See generally* [Doc. 95-1].

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper when the record evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if evidence suggests a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party carries the initial burden, then the burden shifts to the non-moving party to demonstrate that there is an issue of material fact that precludes summary judgment. *Id.* Then, summary judgment is only appropriate if the non-moving party fails to meet its burden of presenting evidence sufficient to create a genuine issue of material fact as to an essential element of its claim. *Celotex Corp.*, 477 U.S. at 323.

### III.    Discussion

A. <u>Plaintiff's TVPRA Claim</u>

A trafficking victim has a civil claim against anyone who "knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1595(a). The TVPRA, in turn, "prohibits the sex trafficking of children or adults by force, fraud, or coercion." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). Thus, TVPRA "beneficiary claims," like the one brought by Plaintiff, give victims a cause of action against those who have profited from their exploitation even when that exploitation occurs as a result of another's acts. *See A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *7 (E.D. Pa. Apr. 22, 2020). As the Eleventh Circuit established in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021) (hereinafter "*Doe #1*"), a person can be liable without participating in the sex trafficking act itself. What is required is that:

> the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit [*i.e.*, participation in a venture], (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726. Defendant concedes that a genuine issue of material fact exists as to the first element—that it knowingly benefited—because it received money for the room

rental. [Doc. 95-1 at 10 n.4]. However, Defendant claims that Plaintiff cannot satisfy the three remaining elements.

>    i.    *Participation in a Venture*

The second element, participation in a venture, requires evidence that Defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 725. Defendant contends that Plaintiff cannot establish this element because,

> [i]n this case, it is [Plaintiff], not her trafficker, that chose to come to the ABVI. Likewise, it is [Plaintiff] that rented the hotel room. As such, any alleged association regarding the venture, as demonstrated by the evidence, is between [Defendant] and [Plaintiff], not [Defendant] and [Plaintiff]'s trafficker.

[Doc. 95-1 at 13]. The Court acknowledges that this case is unique because Plaintiff, rather than her trafficker, rented the hotel room. Contrary to Defendant's contention, however, this fact creates a jury question as to whether Defendant "*took part in* a common undertaking or enterprise" to sex traffic Plaintiff. *Doe #1*, 21 F.4th at 725 (emphasis added).

The only published Eleventh Circuit opinion involving a beneficiary claim, *Doe #1*, found that hotel franchisors did not participate in a venture that violated the TVPRA by "sen[ding] inspectors to the hotels who would have seen signs of sex trafficking and . . . receiv[ing] reviews mentioning sex work occurring at the hotels." *Id.* at 727. The Court reasoned that "observing something is not the same as

7

participating in it." *Id.* In this case, however, Defendant is a hotel owner and operator rather than a franchisor, and the evidence creates a jury question as to whether Defendant participated in, rather than merely observed, a venture to sex traffic Plaintiff. Here, Defendant took money directly from Plaintiff, who was then 16 years old, and rented a room to her, not her trafficker. This distinguishes the instant case from cases in which a trafficker rents a room and the hotel operator occasionally sees the victim on hotel premises with the trafficker. In such cases, a hotel operator could claim plausible deniability as to whether the victim was staying at the hotel at all. Here, however, Defendant took money from Plaintiff, assigned Plaintiff a room on the back side of the hotel, and knew where and for how long Plaintiff would be staying there. Based on these undisputed facts, a jury could conclude that Defendant took affirmative steps—i.e., participated—in a venture to sex traffic Plaintiff.

Moreover, disputed material facts remain as to the issue of Defendant's participation in a venture. For example, other purported sex trafficking victims stated during depositions and in declarations that Defendant assigned them rooms on the back side of the hotel and that sex trafficking activities occurred on the back side of the hotel,[2] which is where Defendant assigned Plaintiff a room and where she was

---

[2] Defendant has objected to the admissibility of such testimony "as not relevant to the subject matter of this lawsuit, or Plaintiff's TVPRA claim, which requires evidence specific to [Plaintiff's] trafficking rather than generalized crime." [Doc. 139 at 18, 20–21, 53, 72]. The Court agrees that testimony about non-sex trafficking crime generally lacks relevance and is inadmissible. However, testimony that tends

sex trafficked. [Doc. 139 at 4, 18, 20, 53, 72]. Because there are outstanding issues of fact that bear on Defendant's participation in a venture, summary judgment must be denied as to second element.

### ii. *Venture's Violation of TVPRA as to Plaintiff*

Having found that issues of fact exist as to Defendant's participation in a venture, the next question is whether "that undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1*, 21 F.4th at 726. To prove this element, Plaintiff must produce evidence that "she was a minor when she was forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe her on the premises." *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023) (citing *U.S. v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)). It is undisputed that Plaintiff was trafficked for sex on Defendant's property when she was a minor. Accordingly, the only remaining question for this element is whether Plaintiff has produced evidence creating an issue of fact that Defendant had a "reasonable opportunity to observe her on the premises." *Tucker Inn Inc.*, 689 F. Supp. 3d at

---

to show that Defendant engaged in a specific pattern of conduct with sex trafficking victims—perhaps to avoid detection—is relevant to whether Defendant engaged in a sex trafficking venture as to Plaintiff. *See* Fed. R. Evid. 404(b)(1)–(2) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . . [but] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

1310. The Court finds that she has.

As it relates to this element, Defendant essentially argues that, based on its observations, it had no reason to know that Plaintiff was younger than 18 or that she was at the hotel to be sex trafficked. *See* [Doc. 95-1 at 14–16] ("Nothing about the interaction during the room rental process was suspicious for sex trafficking at any point."). However, Defendant's argument misses the mark because the question here is whether Defendant had a "reasonable opportunity to observe" Plaintiff, not whether it should have known she was being trafficked based on its observations. *Tucker Inn Inc.*, 689 F. Supp. 3d at 1310; *see U.S. v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019) (quoting *U.S. v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012)) (emphasis in original) ("'[T]he government may prove that the defendant had a reasonable opportunity to view the victim *in lieu of* proving knowledge' or reckless disregard.").

In this case, it is undisputed that Plaintiff visited the hotel lobby on two different occasions to rent a room for herself and that Defendant assigned her room 215. It also undisputed that Plaintiff stayed in room 215 for two days and that housekeeping brought towels to her room. This evidence alone is sufficient to support a jury finding that Defendant had a "reasonable opportunity to observe" Plaintiff. *Tucker Inn Inc.*, 689 F. Supp. 3d at 1310. There are also disputed material facts for the jury to decide on this issue, such as the extent that Plaintiff walked

around the hotel during her stay, what she wore during her stay, and what Defendant and its employees could have observed on security cameras that were recording around the hotel. Accordingly, Plaintiff has produced sufficient evidence as to the third element to survive summary judgment.

### iii. *Defendant's Knowledge that the Venture Violates the TVPRA*

The fourth and final element of Plaintiff's TVPRA claim requires evidence that Defendant had "either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff." *Doe #1*, 21 F.4th at 725. "Knowledge requires '[a]n awareness or understanding of a fact or circumstance.'" *Id.* (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)). Constructive knowledge is "knowledge which 'one using reasonable care or diligence should have.'" *Doe #1*, 21 F.4th at 725 (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)). It is also well established that a federal claim's "knowledge requirement" "can be proved by demonstrating either actual knowledge or deliberate ignorance." *U.S. v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). "[I]f a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." *Id.* To prove that Defendant had the requisite knowledge, Plaintiff may rely on both direct evidence and circumstantial evidence based on the "totality" of circumstances. *U.S. v. Perez*, 698

11

F.2d 1168, 1171 (11th Cir. 1983).

In this case, there is evidence from which a jury could find that Defendant knew or should have known of Plaintiff's minor-aged sex trafficking at its hotel. To begin, there is evidence that tends to show that Defendant was aware, or at minimum, deliberately ignorant of, routine commercial sex activity at the hotel. This evidence includes online reviews about prostitution at the hotel, testimony that Mr. Patel would allow traffickers or victims to pay for rooms after they had made money from commercial sex, and previous prostitution-related stings and arrests at the hotel of which Defendant was aware.[3] As it relates to Plaintiff specifically, there is also evidence that tends to show that Defendant had constructive knowledge that she was being sex trafficked at the hotel, including surveillance footage that captured at least three anonymous men entering her hotel room for 20 to 30 minutes before leaving,

---

[3] Defendant makes hearsay and relevancy objections to the admissibility of online reviews and police reports. *See, e.g.*, [Doc. 139 at 30, 35]. As it relates to hearsay, the police reports are admissible under Federal Rule of Evidence 803(8), except to the extent that the police reports themselves contain hearsay. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (citations omitted) ("[E]ntries in a police report which result from the officer's own observations and knowledge may be admitted but . . . statements made by third persons under no business duty to report may not."). Similarly, the online reviews, if offered to prove Defendant's knowledge of commercial sex at the hotel, are not offered "to prove the truth of the matter asserted in the statement" and, thus, are not hearsay. Fed. R. Evid. 801(C)(2). As it relates to relevancy, these documents and reviews are relevant to prove Defendant's knowledge of frequent commercial sex at the hotel, which, in turn, makes it more likely that Defendant was aware or should have been aware that Plaintiff was being trafficked at its hotel.

followed by Plaintiff's trafficker, who entered the room after they exited. Finally, there is evidence that tends to show that Defendant had constructive knowledge, or remained deliberately ignorant of, Plaintiff's actual age, including her use of a driver's license picturing a 26-year-old woman to check into the hotel. This evidence, considered in its totality, is sufficient to create a jury question as to whether Defendant knew or should have known that Plaintiff was being sex trafficked at its hotel. Accordingly, Defendant's Motion for Summary Judgment must be denied as it relates to Plaintiff's TVPRA claim.

## B. Plaintiff's Public Nuisance Claim

A nuisance is "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. Also relevant in this case, it is a nuisance per se under Georgia law to "knowingly erect, establish, continue, maintain, use, own, or lease any building, structure, or place used for the purpose of lewdness, prostitution, sodomy, the solicitation of sodomy, or masturbation for hire." O.C.G.A. § 41-3-1(a) (1979) (amended 2019).[4] To establish a nuisance claim, a plaintiff must demonstrate

---

[4] The Georgia General Assembly amended O.C.G.A. § 41-3-1 in 2019 as part of the Anti-Human Trafficking Protective Response Act. *See* 2019 Ga. L. Act 30 (S.B. 158). Accordingly, the Court cites and applies the version of O.C.G.A. § 41-3-1 in effect in 2017, when Plaintiff was sex trafficked at Defendant's hotel. *See* 2019 Ga. L. Act 30 (S.B. 158) § 3-1 ("Any offense occurring before July 1, 2019, shall be governed by the statute in effect at the time of such offense . . . .").

"the existence of the nuisance complained of, that he or she has suffered injury, and that the injury complained of was caused by the alleged nuisance." *Bord v. Hillman*, 335 Ga. App. 18, 21 (2015).

Georgia law recognizes two types of nuisances: public and private. *See* O.C.G.A. § 41-1-2. While a "private nuisance is one limited in its injurious effects to one or a few individuals," a "public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. Moreover, a public nuisance differs from a private nuisance in that "[a] public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action." O.C.G.A. § 41-1-3. As previously discussed, Plaintiff brings a claim for public, rather than private, nuisance. Although several TVPRA cases before this Court have contained claims for private nuisance, the Court is aware of only one other sex trafficking case to contain a claim for public nuisance. *See, e.g.*, *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-CV-00844-SEG, 2024 WL 1928755, at *13–14 (N.D. Ga. Mar. 18, 2024) (discussing private nuisance in sex trafficking context); *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3 1304, 1311 (N.D. Ga. 2023) (same).[5]

---

[5] The sex trafficking case containing the claim for public nuisance is currently pending in the State Court of Dekalb County, *Jane Doe v. Suresh & Durga, Inc.*, Civil Action File No. 20A83795-5. At summary judgment, the trial court allowed

### i. Standing for Public Nuisance Claim

Because public nuisances do not generally provide individuals a right of action, the Court must first determine whether Plaintiff has produced evidence that the alleged nuisance in this case—"[t]he operation of the ABVI hotel"—caused her "special damage." [Doc. 1 at 36]; O.C.G.A. § 41-1-3; *see Sons of Confederate Veterans v. Henry Cnty. Bd. of Comm'rs*, 315 Ga. 39, 60 n.17 (2022) (discussing special damage as a requirement for standing to sue for public nuisance). A plaintiff suffers special damage to sue for a public nuisance if she suffers harm to her health or property, notwithstanding that others may have also suffered the same harm. *See Savannah, F. & W. Ry. Co. v. Parish*, 117 Ga. 893, 893 (1903) ("Whatever affects his health affects him specially, and him alone. Such damage is special damage within the meaning of the Code, and the fact that other citizens suffer similar special damages does not convert his injury into the nature of public damages. So, too, anything which damages a particular plaintiff's property, or renders it unfit for use, is not lost in the general and public nuisance.").

---

the plaintiff's common law public nuisance claim to proceed but rejected the plaintiff's reliance on O.C.G.A. § 41-3-1 to support a private cause of action for damages. As to the application of O.C.G.A. § 41-3-1, the undersigned respectfully departs from his colleague's decision in the state action and finds that the plain language of that provision provides a method by which Plaintiff may establish the existence of a nuisance. However, Plaintiff must still prove injury, causation, and that the nuisance "damages all persons who come within the sphere of its operation." O.C.G.A. § 41-1-2.

Here, it is undisputed that Plaintiff was sex trafficked at Defendant's hotel as a minor, which Plaintiff alleges—and a jury could find—caused her "personal injuries, mental and emotional pain and suffering, [and] mental anguish." [Doc. 1 at 37]. A jury could also find that the operation of the hotel caused Plaintiff's injuries. As discussed above, for example, there is evidence from which a jury could conclude that Defendant knew or should have known that Plaintiff was being sex trafficked at the hotel. There are also disputed facts about whether Defendant took preventative measures to stop sex trafficking at its hotel. *See* [Doc. 139 at 33]. Accordingly, the Court finds that Plaintiff has produced sufficient evidence to establish standing to sue for public nuisance.

### ii. *Existence of Nuisance or Nuisance Per Se*

Having found that Plaintiff has standing to sue for public nuisance, she must next produce evidence that Defendant's operation of the hotel constituted a nuisance. She may do this by proving the existence of a nuisance per se under O.C.G.A. § 41-3-1 or by proving that, "by reason of its location or by reason of the improper or negligent manner in which it [was] conducted," the operation of the hotel "cause[d] hurt, inconvenience, or damage" to Plaintiff. *Rice v. Six Flags Over Ga.*, 257 Ga. App. 864, 868 (2002) (quoting *Asphalt Prods. Co. v. Marable*, 65 Ga. App. 877, 882 (1941)); O.C.G.A. § 41-1-1.

Beginning with nuisance per se, the relevant parts of the statute at issue require Plaintiff to prove that Defendant "knowingly . . . own[ed] . . . [a] building, structure, or place used for the purpose of . . . prostitution . . . ." O.C.G.A. § 41-3-1(a) (1979) (amended 2019). It is undisputed that Defendant owned the hotel at all times relevant to this litigation. Accordingly, the remaining questions are whether the hotel was "used for the purpose of . . . prostitution" and, if so, whether Defendant had knowledge of that fact. The Court finds that Plaintiff has produced evidence to create jury issues as to both of these questions.

As it relates to whether the hotel was used for the purpose of prostitution, there is evidence that previous prostitution-related stings and arrests had occurred at the hotel, testimony that sex trafficking occurred on the back side of the hotel, and the undisputed fact that Plaintiff was sex trafficked at the hotel. As it relates to Defendant's knowledge about prostitution at the hotel, the evidence includes online reviews about prostitution at the hotel, testimony that Mr. Patel would allow traffickers or victims to pay for rooms after they had made money from commercial sex, and the undisputed fact that Defendant was aware of previous prostitution-related stings and arrests at the hotel.

Defendant relies on the Georgia Supreme Court's decision in *Kim v. State*, 272 Ga. 343 (2000), to support its contention that it could not have operated a nuisance per se under O.C.G.A. § 41-3-1 because the hotel "is not operated *for the*

17

*purpose* of sexually related crimes." [Doc. 95-1 at 23] (emphasis in original); [Doc. 140 at 14]. However, the Court did not interpret O.C.G.A. § 41-3-1 in *Kim* because the only issue before it was whether "the trial court erred in consolidating the interlocutory and final hearing for injunctive relief." *Kim*, 272 Ga. at 343. The language that Defendant relies on in *Kim* was contained in the background portion of the Court's opinion only to describe what "the trial court found . . . ." *Id.* In essence, Defendant interprets O.C.G.A. § 41-3-1 to require a place to be "operated *solely* for the purpose of" prostitution, but that interpretation is not supported by the statute's plain language. Instead, all that is required is that the hotel be "used for the purpose of" prostitution. O.C.G.A. § 41-3-1(a) (1979) (amended 2019). There is sufficient evidence at this stage for a jury to conclude that it was.

In addition to producing evidence that the hotel is a nuisance per se under O.C.G.A. § 41-3-1, Plaintiff has also produced evidence that "by reason of its location or by reason of the improper or negligent manner in which it [was] conducted," the operation of the hotel "cause[d] hurt, inconvenience, or damage" to Plaintiff. *Rice v. Six Flags Over Ga.*, 257 Ga. App. 864, 868 (2002) (quoting *Asphalt Prods. Co. v. Marable*, 65 Ga. App. 877, 882 (1941)); O.C.G.A. § 41-1-1. As to the issue of Defendant's "improper or negligent" operation of the hotel, there is evidence that Defendant assigned prostitutes and sex trafficking victims rooms on the back side of the hotel and that Mr. Patel allowed traffickers or victims to pay for rooms

after they had made money from commercial sex. *Rice*, 257 Ga. App. at 868. And, as it relates to causation, a jury could conclude that by assigning Plaintiff a room on the back side of the hotel and by failing to recognize that Plaintiff was a minor and not the 26-year-old woman pictured on the driver's license she presented, Defendant's improper or negligent acts caused Plaintiff to be sex trafficked. Accordingly, whether she relies on O.C.G.A. § 41-3-1 or common law, the Court finds that Plaintiff has presented sufficient evidence as to the existence of a nuisance to survive summary judgment.

### iii. *Damaging All Who Come Within the Sphere of its Operation*

If Plaintiff were suing for private nuisance, the Court's inquiry would be at an end. However, because Plaintiff is suing for public nuisance, the Court must consider whether she has presented evidence to prove that the operation of the hotel "damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. The Georgia Supreme Court has clarified that

> [t]his language is not used in the sense that every person in the area must have been actually hurt or injured in order to show a public nuisance. It is sufficient if it injures those of the public who may actually come in contact with it. A public nuisance exists if the act complained of affects rights which are common to all within a particular area.

*City of Douglasville v. Queen*, 270 Ga. 770, 774 (1999) (quoting *Moreland v. Cheney*, 267 Ga. 469–70 (1997)). Nevertheless, the limited Georgia caselaw on public nuisance demonstrates that, although Plaintiff's claim may survive summary judgment, it is not a great "fit" based on the evidence presented.

In many public nuisance cases, the nuisance at issue intuitively injures all who come into contact with it. Examples include polluted air and poor road maintenance that delays emergency responders in the area.[6] And, as previously discussed, the Court is aware of only one Georgia case with a public nuisance claim in the sex trafficking context. *See Jane Doe v. Suresh & Durga, Inc.*, Civil Action File No. 20A83795-5. Although the trial court permitted the public nuisance claim to proceed in that case, the Georgia Court of Appeals has recently affirmed the dismissals of two child sexual abuse cases—one involving Boy Scouts of America scoutmasters and one involving a church priest—based in part on the lack of damages to "all persons" coming within the spheres of their operations. *See McArthur v. Beech Haven Baptist Church of Athens*, 361 Ga. App. 877 (2021); *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710 (2020).

However, the Court believes that the evidence in this case places it more closely in line with cases in which the nuisance at issue invites "idleness, loitering,

---

[6] *See Atlanta Processing Co. v. Brown*, 227 Ga. 203 (1971) (polluted air); *City of College Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209–10 (2008) (road maintenance).

vagrancy, and a tendency to breed crime and debauch the morals of the community" and has "an appreciable blighting effect on the surrounding community, such as a gambling establishment or unlicensed liquor store." *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 717 (2020) (quoting *Chancey v. Hancock*, 233 Ga. 734, 734 (1975)). For example, Plaintiff presents evidence of at least 19 different arrests that occurred at the hotel for sexual-related offenses between 2011 and 2017. Based on these arrests, a jury could conclude that the operation of Defendant's hotel "affect[ed] rights which are common to all within a particular area" because it "had a tendency to breed crime" and, as a result, "had an appreciable blighting effect on the surrounding community." *City of Douglasville v. Queen*, 270 Ga. 770, 774 (1999); *Chancey v. Hancock*, 233 Ga. 734, 738 (1975); *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 717 (2020) (affirming dismissal of public nuisance claim absent allegations that sexual abuse in the church had "an appreciable blighting effect on the surrounding community").

Although the Court finds at this stage that Plaintiff has presented sufficient evidence that the operation of the hotel "damages all persons who come within the sphere of its operation," the Court has doubt about the viability of Plaintiff's public nuisance claim in this factual context. O.C.G.A. § 41-1-2. Sex trafficking is an inherently personal offense, and consequently, it does not mesh well with the concept of public nuisance. While the Court believes that Plaintiff's public nuisance

21

claim is unlikely to succeed, it will nevertheless allow the claim to proceed at this juncture.

However, given that Plaintiff's public nuisance claim is weak and clearly ancillary to her TVPRA claim, the Court is concerned that the scope of admissible evidence at trial will be significantly broadened by letting it proceed. For example, evidence of gang activity at the hotel might be relevant and admissible to prove Plaintiff's public nuisance claim, but at a trial for a TVPRA claim only, such evidence would likely be inadmissible as unfairly prejudicial under Federal Rule of Evidence 403. To alleviate this concern, the Court, in its judicial discretion, will limit the scope of admissible evidence at trial to that evidence which is relevant to prove Plaintiff's TVPRA claim. Accordingly, the Court will not permit Plaintiff to introduce evidence that would be otherwise inadmissible at a trial for a TVPRA claim. The Court also cautions that, if the jury finds for Defendant on the TVPRA claim but for Plaintiff on the public nuisance claim, the Court may grant a renewed motion for judgment as a matter of law on the public nuisance claim should Defendant make such a motion.

C. Plaintiff's Requests for Punitive Damages and Attorney Fees

Defendant also claims that the Court must grant summary judgment on Plaintiff's claims for punitive damages and attorney fees. *See* [Doc. 95-1 at 24–25]. As it relates to attorney fees, 18 U.S.C. § 1595(a) specifically provides that a TVPRA

victim "may recover . . . reasonable attorneys fees." Because the Court finds that questions of fact remain as to Plaintiff's TVPRA claim, summary judgment is inappropriate for Plaintiff's request for attorney fees.

As it relates to punitive damages, "[w]hether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence only creates an inference of the defendant['s] conscious indifference to the consequences of [its] acts." *Weller v. Blake*, 315 Ga. App. 214, 219–20 (2012). "Consequently, just as 'there are material questions of fact regarding [Plaintiff's] allegations of . . . nuisance, the evidence of such acts by [Defendant] could allow a jury to consider a claim for punitive damages." *McDonald v. Silver Hill Homes, LLC*, 343 Ga. App. 194, 196 (2017) (quoting *Tyler v. Lincoln*, 272 Ga. 118, 121 (2000)). Accordingly, Defendant's request for summary judgment on punitive damages is similarly denied.

## IV.    Conclusion

For the reasons discussed herein, Defendant's Motion for Summary Judgment [Doc. 95] is **DENIED**.

**IT IS SO ORDERED** this 15th day of July, 2024.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE