UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| D.H., | |
| Plaintiff, | |
| | CIVIL ACTION FILE |
| v. | |
| | NO. 1:22-CV-03419-JPB |
| TUCKER INN INCORPORATED, d/b/a SUPER 8 BY WYNDHAM, | |
| Defendant. | |

**PLAINTIFF'S MOTION IN LIMINE
ABOUT OTHER INCIDENT EVIDENCE**

Defendant has made "time period" and relevance objections to almost every piece of evidence (documentary or testimonial) showing other instances of sex trafficking, prostitution, pandering or related sexual incidents at the Super 8 unless it occurred during the 11 days Plaintiff was trafficked at Defendant's hotel. *See* Ex. 1.[1] This includes objections to documents Defendant produced, such as its own daily calendar showing more than a hundred notations of "more traffic" in rooms at the hotel. These incidents are important and essential evidence showing that

---

[1] Attached as Exhibit 1 is a truncated version of Plaintiff's exhibit list, showing the evidence at issue and Defendant's objections. Also included is a list of the witnesses' testimony and the time periods that testimony covers. Finally, also included is the stipulation the parties entered agreeing that the pictured item (dildo) was found on Defendant's property during a noticed site visit in 2023. Exhibit 1 is the evidence which Plaintiff requests the Court to rule admissible as to objections regarding "time period" and "relevance" from Defendant.

Defendant's knowledge and participation in the nuisance, including sex trafficking, are not unrelated incidents.

Evidence related to illegal sex crimes occurring at Defendant's Super 8 before and after Plaintiff's trafficking there in 2015 is admissible in this case for three reasons: as impeachment evidence to show Defendant's knowledge, bias, and contradiction; to show the existence of a public nuisance; and as admissible evidence of Defendant's *modus operandi*.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    Evidence after Plaintiff's trafficking is relevant impeachment evidence.**

As in a related case against Defendant,[2] evidence of other illegal sex crimes at the Super 8 is relevant to impeach Defendant's testimony that it has never—not once—seen anything at the Super 8 that would cause Defendant to suspect that prostitution, pimping, or sex trafficking ever occurred there.

> 12  Q.  Have you ever suspected someone of engaging in
> 13   prostitution at the hotel?
> 14  A.  No.
> 15  Q.  Not once?
> 16  A.  No.

> 3  Q.  Have you ever seen anyone that you thought was
> 4   a pimp on the property?
> 5  A.  No.

---

[2] *E.M. v. Tucker Inn, Inc.*, No. 1-22-2559-WMR, (N.D. Ga. 2022).

> 20  Q.  Have you ever suspected anyone of being sex
> 21      trafficked at the hotel?
> 22  A.  No.

Doc. 115-5 at 72:12–16; 74:3–5; 76:20–22.

In the related *E.M.* case, District Judge William Ray discussed the breadth of impeachment evidence that such testimony opens the door to a sex trafficking case against the hotel.

> You know what maybe makes all that stuff admissible is your client's statement that he doesn't think he ever had a sex trafficking or sex industry problem going on at his hotel. He really opens the door to a wide range of evidence to come in to impeach his credibility. And in fact, he can't unring that bell because he said it and it's in the record. And the deposition transcript that he gave can be used in federal court as substantive evidence. They don't have to put him on the stand for that purpose. I mean, they can just simply introduce it.

> I mean, we think about the trial that's going on in New York; right. The defendant in that case denying an illicit relationship opened the door to a lot of testimony that might not otherwise come in. And I think your client has probably done the same thing, because he wasn't realistic perhaps with his statement that he didn't have reason to know.

> Like for example, one thing that we have in this case that we didn't have in a different case that I have . . . [was] what was being said on chat boards and online reviews. But your client has admitted, right, that he was privy to online reviews that talked about prostitution. I don't know if they talked about sex trafficking in the legal sense. But yet he then still goes and says that he just doesn't, you know, think any of that was going on on his property. Seems like all of that really . . . paints Mr. Patel into a corner as it relates to whether he's being honest when he tries to claim that he heard no evil and saw no evil. Because it seems like there was plenty of evil all around him.

Ex. 2, *E.M. v. Tucker Inn, Inc.*, Summary Judgment Hearing, 19:4-20:12 (May 13, 2024).

The same is true in this case, which shares all the depositions with the *E.M.* case. Defendant has testified that it has never once suspected prostitution, pimping, or sex trafficking on its property despite roughly thirty arrests for conduct related to illegal sex, and three separate instances of individuals being arrested for human trafficking at the Super 8. This is in addition to substantial witness testimony from both before and after Plaintiff's trafficking that Defendant allowed, facilitated, and participated in the illegal sex activity in a variety of ways. This evidence is admissible impeachment evidence, whether it occurred before or after Plaintiff's trafficking.

"Impeachment evidence is evidence that is 'offered to discredit a witness ... to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony.'" *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1180 (N.D. Ga. 2008), *aff'd,* 356 Fed. Appx. 358 (11th Cir. 2009) (quoting *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517 (5th Cir.1993)). "Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607.

Contradiction and bias are two of the five primary means of attacking a witness's credibility. § 6094 Bases For Attacking Credibility, 27 Fed. Prac. & Proc. Evid. § 6094 (2d ed.). A successful showing of bias or contradiction as to a fact of

consequence to the case is relevant admissible evidence because it has "a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 50–51, 105 S. Ct. 465, 468 (1984).

Here, the evidence that Defendant enacted policies to advance and facilitate illegal sex crimes, including sex trafficking, at its hotel is admissible under several of the classic scenarios of bias. These include: **(1)** Defendant's business interest in accepting money from illegal crimes at the Super 8, bias in protecting those whose crimes it facilitated, and in the outcome of the litigation against itself, *Samuels v. United States*, 605 A.2d 596, 598 (D.C. 1992) (trial court properly allowed evidence to show witness used and bought narcotics from defendant and "could have a greater desire to protect a person" whom she bought and used drugs with); *United States v. Robinson*, 530 F.2d 1076, 1079 (D.C. Cir. 1976) (prosecution properly was permitted to show that defense witness and defendant were not simply friends, but partners in an illegal drug trafficking business); **(2)** Defendant's employment relationship, *Wilmington Tr. Co. v. Manufacturers Life Ins. Co.*, 624 F.2d 707, 709 (5th Cir. 1980) (summary judgment reversed in part because it deprived plaintiff of opportunity to impeach by showing witness was biased in favor of his employer); **(3)** bribery, such as Defendant's acceptance of money from illegal sex crimes and loaning rooms to be used to generate the room rental fees, *United States v. Honneus*, 508 F.2d 566,

572 (1st Cir. 1974) (trial court improperly excluded evidence that witness had solicited bribe from defendant).

Similarly, the "other incident" evidence, from any time period, is relevant to classic impeachment of Defendant by contradiction, showing that a fact a witness testified to is not true. As an initial matter, it cannot be said that Defendant's testimony that it lacks any knowledge of any illegal sex acts at its hotel is not material—it is the crux of both the TVPRA claim and the public nuisance claim that Defendant knew or should have known about its hotel's participation in creating a nuisance and Plaintiff's own trafficking. Defendant's knowledge, actual or constructive, is one of the ultimate issues for the jury to decide in the case. And contradictions as to material issues (non-collateral matters) can be proven both by extrinsic evidence as well as by the testimony of a witness. § 6095 Bases For Attacking Credibility—Bias, 27 Fed. Prac. & Proc. Evid. § 6095 (2d ed.).

This scenario again presents the classic bases for contradiction evidence of sex crimes at Defendant's hotel: (1) facts admissible to prove substantive issues in the case; and (2) facts to impeach the witness. *United States v. Lambert*, 463 F.2d 552, 557 (7th Cir. 1972) (contradiction evidence was not collateral because it was otherwise relevant and admissible to show knowledge of defendant, which was an essential element of the crime charged); *Prater v. United Mine Workers of Am., Districts 20 & 23*, 793 F.2d 1201, 1212 (11th Cir. 1986) (defendant mining company

employees were not disinterested, but impeachment testimony that they enticed union members was properly admitted).

Evidence of other incidents involving Defendant and sex crimes at its hotel are also admissible because it is inextricably intertwined with the elements of this case. As noted above, what makes this evidence material is that it goes to Defendant's knowledge, control, motive, design, pattern and practice of allowing the illegal sex crimes in order to profit from them, which are elements of both the TVPRA claim (knowledge and participation) and the public nuisance claim (control, pattern and practice). *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010) (evidence of other acts of bribery were "inextricably intertwined with evidence of the charged bribery offenses" and to show defendants' "common plan and motive"); *see also United States v. Crockett*, 514 F.2d 64, 72 (5th Cir. 1975) ("evidence of other acts of misconduct or crimes is regarded as admissible for the purpose of showing knowledge, intent, motive, design, scheme, or the like, where such is an essential element of the commission of the offense.").

Evidence of sex crimes and Defendant's knowledge and participation in those crimes is admissible and relevant impeachment evidence showing bias and contradiction, as well as to prove knowledge, motive, and common pattern and practice. The Court should hold that such "other incident" evidence is likewise admissible in this case.

## II.    Other incident evidence is admissible to prove the existence of the nuisance.

A public nuisance claim such as the one in this case, involving a "lewd house" or a house permitting prostitution, can be proven in two ways. The first is per se. "A lewd house is per se a 'public nuisance.'" *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916). In the per se scenario, a jury must only find that illegal sex acts occurred at the hotel, that Defendant operated the hotel, and that Defendant knew or should have known about the illegal sex acts. *Fitzgerald v. State*, 10 Ga. App. 70, 71–72 (1911) ("Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests.").

Setting aside the per se scenario, under a general public nuisance claim, the jury must find that Defendant was at least one cause of the creation, *continuance, or maintenance* of the public nuisance. *See* Ex. 3, *Jane Doe v. Suresh & Durga*, No. 20A83795-5, (May 8, 2024) at *6. The "continuance"—the ongoing nature of the nuisance—is an element of the cause of action. Otherwise, a claim would not sound in nuisance, but would only be an isolated tort.

Thus, it is relevant to proving the existence of the nuisance that Defendant did in fact "continu[e]" or "main[tain]" the nuisance at its hotel. *See id.* ("[N]o defendant will be liable for a nuisance unless the claimant shows that her injuries were the natural and proximate result of the wrongdoer's creation, maintenance, or continuance of a nuisance."). In other words, all evidence showing illegal sex acts and Defendant's participation in or knowledge of those acts at the hotel is directly relevant to proving the existence of a public nuisance that spanned years as opposed to an isolated incident. For that reason, evidence showing illegal sex crimes or acts at the hotel before and after Plaintiff's trafficking are admissible.

## III.    Evidence after Plaintiff's trafficking is admissible evidence of Defendant's *modus operandi*.

Evidence of other sex crimes at Defendant's hotel is admissible evidence that the Defendant's *modus operandi* and illegal policies, as exhibited in these similar incidents, were also enacted as to Plaintiff and other witnesses. That is how *modus operandi* evidence works.

The substantial testimony of numerous witnesses as to the placement of sex trafficking victims on the back side of the hotel, the policy to go to the hotel manager instead of the police, loaning hotel rooms for free to receive payments from selling illegal sex later, charging different prices to prostitutes and renting rooms by the hour or half hour is evidence that the hotel's *modus operandi* was to do just that: permit and facilitate sex trafficking, including Plaintiff's minor sex trafficking, at

the hotel because it was profitable for the hotel to do so. Courts permit such *modus operandi* evidence in TVPRA cases to prove knowledge that a defendant facilitated *the plaintiffs'* sex trafficking. For example:

> Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge. *See Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's modus operandi was a permitted method to demonstrate knowledge under the TVPRA); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution"); *Boyce v. Weber*, No. 19-CV-3825 (JMF), 2021 WL 2821154, at *4–6 (S.D.N.Y. July 7, 2021) (permitting modus operandi to establish knowledge under the TVPRA). Courts have also found that a defendant's actions subsequent to the events charged in a suit were permitted to show the defendant had a modus operandi. *Turner v. United States*, 426 F.2d 480, 483–84 (6th Cir. 1970) (allowing evidence of stolen automobiles after the charged theft to prove defendant's modus operandi); *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974) (articulating that a subsequent incident is permitted to show modus operandi if the subsequent act "bears such a high degree of similarity as to mark it as the handiwork of the accused").

*Treminio v. Crowley Mar. Corp.*, 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024), *reconsideration denied,* 3:22-cv-174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024); *see also Doe A v. Seatac Hotels LLC*, C24-1270 MJP, 2025 WL 474233, at *5 (W.D. Wash. Feb. 12, 2025) (same); *Doe (S.A.S.) v. ESA P Portfolio LLC*, 3:23-CV-06038-TMC, 2024 WL 3276417, at *10 (W.D. Wash. July 2, 2024) (same); *Doe #1 v. Crowley Mar. Corp.*, 3:23-CV-383-MMH-JBT, 2024 WL

10

1346947, at *7 (M.D. Fla. Mar. 29, 2024) (same); *Doe #1 v. Crowley Mar. Corp.*, 3:23-CV-383-MMH-JBT, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024) (same).

*Modus operandi* evidence may be used to show knowledge and lack of mistake as well as identity. *Id.* Thus, it is a permissible inference for the jury to make that the hotel's interactions with Plaintiff and her sister/trafficker were not unknowing mistakes, but rather, that the motel operated in accord with its usual practices and policies in allowing sex trafficking, just as it did in the cases of other victim-witnesses. *United States v. Solomon*, 490 F. Supp. 373, 375 (S.D. Ga. 1980) ("Such evidence is admissible if the two offenses possess a common feature or features that make it very likely the offenses were perpetrated by the same person, or possess a number of common features of lesser uniqueness which, when considered together, are significantly probative."). As to identity, it is a permissible inference that Defendant is identified as committing similar acts of participation as to each witness.

To prove identity by *modus operandi*, the Eleventh Circuit looks at the similarities between the alleged crimes. *United States v. Acevedo*, 860 Fed. Appx. 604, 610 (11th Cir. 2021). In *Acevedo*, the Court of Appeals affirmed the use of *modus operandi* evidence of other crimes because they were close in time (within a year), within the same geographic area, and were largely identical crimes. *Id.* Here, comparing the participation in each witness and Plaintiff's sex trafficking, the crimes

occurred within a year of at least one other witness's crimes, in the exact same location, the hotel. The crimes were also identical—sex trafficking—or nearly identical—prostitution—and Defendant has testified it cannot tell the difference between the two crimes. What's more, the details are strikingly similar, with the hotel taking an active role in concealing and allowing sex trafficking, placing at least three victims (two minors) in the *same back room* of the hotel. Thus, the *identity* of the hotel as participating in both crimes, as well as the hotel's *knowledge* that it was doing so, are both supported by the admission of such *modus operandi* evidence. *Id.*; *Treminio*, 2024 WL 382400, at *6.

Because both Defendant's participation and knowledge may be proven by this *modus operandi* evidence, other incident evidence should also be admitted at trial.

## CONCLUSION

Because evidence of illegal sex crimes after Plaintiff's trafficking at the Super 8 are relevant and admissible for at least the above reasons, Plaintiff asks the Court to hold that the evidence listed on Exhibit 1 is not objectionable simply on the basis of when the testimony, incidents, or stipulations occurred or that they did not involve Plaintiff directly.

Respectfully submitted June 17, 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile