UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

D.H.,

     Plaintiff,

v.

TUCKER INN INCORPORATED,
d/b/a SUPER 8 BY WYNDHAM,

     Defendant.

CIVIL ACTION FILE

NO. 1:22-CV-03419-JPB

## PLAINTIFF'S MOTION IN LIMINE
## ABOUT JOINT-AND-SEVERAL LIABILITY

Congress enacted the TVPRA[1] "to combat trafficking in persons, a

---

[1] The original Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, did not create a civil cause of action. Congress created a civil cause of action for victims of sex trafficking (as well as victims of forced labor and human trafficking) in 2003. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). Since then, sex-trafficking victims have had the right to sue their perpetrators in federal court to "recover damages and reasonable attorneys fees." *Id.* In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (codified at § 1595(a)).

But Congress made other changes in 2008 that drastically expanded the civil cause of action. For example, Congress enlarged the category of "perpetrators"—changing it from violators of only §§ 1589, 1590, or 1591 to violators of any provision in Chapter 77 of Title 18. *Id.* That's significant because Congress also added a provision criminalizing "conspiracy" to commit sex trafficking, *id.* § 222(c), 122 Stat. 5070 (codified at 18 U.S.C. § 1594(c)), added "maintains" to the list of acts ("recruits, entices, harbors, transports, provides, or obtains") that can constitute criminal sex trafficking, *id.* § 222(5), 122 Stat. 5069 (codified at 18 U.S.C. § 1591(a)(1)), and

contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466. Twenty-five years later, there is still much work to be done to eliminate the scourge of sex trafficking.

For years, Super 8[2] has provided a place for the sellers and buyers of girls and women for sex to do so. Now, D.H. has sued Super 8 for its role in her sex trafficking (seeking damages and attorney's fees) and to punish and deter Super 8 for benefiting while turning a blind eye (or worse) to her sex trafficking (punitive damages).

The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers D.H. to pursue these dual goals of compensation and punishment. And it ensures that D.H. can, if she prevails, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. But because the TVPRA civil-liability statute says nothing about joint-and-several liability or punitive damages, D.H. files this Motion in Limine.

---

added "reckless disregard" as a culpable state of mind for criminal sex trafficking, *id.* (codified at § 1591(a)). Congress also added a ten-year statute of limitations for civil claims. *Id.* § 221, 122 Stat. 5067 (codified at § 1595(c)).

In the years since 2008, Congress has made changes to the TVPRA civil-action statute. At every turn, those changes enlarged the rights of sex-trafficking victims. Similarly, Congress's changes to the criminal TVPRA provisions since 2008 have been to criminalize more misconduct.

[2] Plaintiff refers to Defendant Tucker Inn Incorporated d/b/a Super 8 by Wyndham as "Super 8."

Congress intended for TVPRA civil liability to be joint and several. That point is clear when the whole act is considered. The Supreme Court's decisional law bolsters this conclusion. To answer whether Super 8's TVPRA liability for D.H.'s damages from being sex trafficked is joint and several the Court must look to the general common law of torts. *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The answer is that Super 8 is jointly and severally liable. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003). That's what *every* court to consider the issue has decided. *See* Ex. 1, *Doe (K.E.C.) v. G6 Hosp., LLC, et al.*, No. 1:23-cv-270 (E.D. Tex. June 16, 2025) (analyzing this week the only three other cases in the country addressing the issue); *W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-5263, 2024 WL 2892322, at *2 (N.D. Ga. June 10, 2024) (Calvert, J.) ("Damages under the TVPRA are joint and several." (bold omitted)); *K.M. v. Reva Properties, LLC*, No. 1:22-cv-3991, 2024 WL 1217420, at *2 (Thrash, J.) (noting, without deciding, that it would be "surprising that Congress intended to permit apportionment without saying so since it was foreseeable that others would be involved in these claims and since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine the effect of the civil beneficiary provision."); *Ditullio v. Boehm*, No. 3:09-cv-113, 2010 WL 11534265, *4 (D. Alaska Feb. 23, 2010) (agreeing that the TVPRA's civil remedy section "does not provide for the application of state law, and therefore state

apportionment rules do not apply.").

This Court should also decide joint and several liability applies to Plaintiff's TVPRA claim.

Here, D.H. brings not only a federal TVPRA civil claim but also a Georgia-law claim for public nuisance against Super 8. But Super 8's liability is the same for both claims: joint and several. Under the facts here, Georgia's common-law rules on joint-and-several liability—not the Georgia apportionment statute—govern the hotel's liability for D.H.'s public-nuisance claim. While Super 8 wants this Court to apply the current apportionment statute, doing so would be unconstitutional.

In September 2015, when D.H.'s cause of action accrued, the Georgia apportionment statute applied only when "an action is brought against *more than one person.*" O.C.G.A. § 51-12-33(b) (emphasis added).[3] D.H. has always brought this action against one defendant: Super 8. While the Georgia General Assembly amended the apportionment statute in May 2022, that change cannot apply to causes of action such as D.H.'s that had accrued but were filed after the amendment's effective date—even though the Act says otherwise.[4] That's because applying the *current*

---

[3] Unsurprisingly, the Georgia Supreme Court held that this language meant exactly what it said: Apportionment to nonparties is unavailable under Georgia law when only one person is sued. *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, Inc.*, 862 S.E.2d 295, 301–02 (Ga. 2021).

[4] D.H. filed this action on August 24, 2022. In May 2022, the Georgia General Assembly amended the language of § 51-12-33(b) so that it applied to all actions

apportionment statute to D.H.'s case (and all cases filed after May 13, 2022, involving causes of action that accrued before that date) violates both the Georgia Constitution and the U.S. Constitution.[5]

D.H. asks that this Court reach the same conclusion as Judge Calvert and hold that TVPRA liability is joint and several. D.H. also asks this Court to hold that Super 8's liability for D.H.'s public-nuisance claim is joint and several because the 2022 changes to the Georgia apportionment statute cannot apply retroactively to causes of action that had accrued but had not yet been filed. Because Super 8's liability is joint and several for D.H.'s claims under both federal and state law, the jury should not be bombarded with evidence about the potential liability of other parties, including the nonparty Santresia, whom Super 8 has disclosed as a potential nonparty to whom fault should be apportioned. *See* Fed. R. Evid. 401, 402 & 403.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Super 8 is jointly and severally liable under the TVPRA.

Under the TVPRA, Super 8 is jointly and severally liable for D.H.'s damages. That conclusion follows directly from the TVPRA's statutory text and structure and

---

"brought against one or more persons." In doing so, the General Assembly purported to make this change applicable to any action filed after May 13, 2022, the Act's effective date. *See* 2022 Ga. Laws 876.

[5] Under O.C.G.A. § 9-4-7(c), D.H. served the Georgia Attorney General with this motion in case the Attorney General would like to appear to try to defend the constitutionality of the May 2022 amendment to the Georgia apportionment statute.

reflects the general common law of torts.

### A. The TVPRA's statutory text and structure shows that Congress intended Super 8's civil liability to be joint and several.

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked. *See supra* n.1. "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). So Congress knew that a beneficiary claim necessarily required others' involvement to trigger liability. *See K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.). Yet Congress said nothing about apportionment in § 1595. At the same time, no court has ever allowed apportionment for a TVPRA beneficiary claim. Given all that, Judge Thrash recently concluded that "[i]t would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so." *Id.*

To Judge Thrash, Congress's failure to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—was especially telling since the TVPRA's restitution

statute "plainly does allow for apportionment." *Id.*[6] Indeed, as Judge Thrash empha-

sized, "[i]t would also be surprising that Congress intended to permit apportionment

without saying so"—especially "since allowing civil beneficiary defendants to ap-

portion fault to traffickers, individuals who sexually assault victims, and other ben-

eficiaries would drastically undermine the effect of the civil beneficiary provision."

*Id.*

Judge Calvert agreed with Judge Thrash in the only order directly ruling on

whether the TVPRA civil-liability statute makes liability joint and several. Rejecting

Red Roof's argument in that case, Judge Calvert "note[d] that apportionment would

frustrate the purpose of the TVPRA's civil beneficiary provision." *W.K.*, 2024 WL

2892322, at *2.[7] Quite so.

---

[6] The restitution statute requires judges to order restitution to be "issued and enforced
in accordance with section 3664." 18 U.S.C. § 1593(b)(2). And 18 U.S.C. § 3664(h)
permits courts to "make each defendant liable for payment of the full amount of
restitution" or "apportion liability among the defendants to reflect the level of con-
tribution to the victim's loss and economic circumstances of each defendant."

[7] Judge Land in the Middle District of Georgia reached a similar conclusion when
addressing the applicability of the Georgia apportionment statute to federal civil-
rights claims under 42 U.S.C. § 1983. Judge Land held that the Georgia statute did
not apply. *Wright v. Watson*, No. 4:15-cv-34, 2017 WL 4126981, at *1 (M.D. Ga.
Sept. 18, 2017) (Land, C.J.).

He gave two reasons. *First*, the Eleventh Circuit and the former Fifth Circuit have
held that liability for § 1983 damages is joint and several. *Id.* at *2 (collecting cases).
*Second*, the Georgia apportionment statute's mandate that the jury consider the fault
of the persons or entities who contributed to the plaintiff's injuries and damages—
"regardless of whether the person or entity was, or could have been, named as a party
to the suit," *id.* at *3 (quoting O.C.G.A. § 51-12-33(c))—contravened two important

And just yesterday, another district judge joined this "germinating consensus" to again hold that claims under the TVPRA are joint and several and not subject to state apportionment rules. Ex. 1, *Doe (K.E.C.)*, No. 1:23-cv-270. In the Eastern District of Texas, Judge Michael Truncale held that applying Texas apportionment to the federal statute, "would chafe against the purpose of the TVPRA's civil provision, as revealed by its plain language" in part because the phrase "participation in a venture show[s] that Congress contemplated violations brought about by concerted efforts." *Id.* at *9.

As Judge Thrash noted, Congress allows apportionment for TVPRA restitution orders. But despite amending § 1595 four times since 2003, Congress has never added anything about apportionment. That omission is presumed to be intentional and purposeful. For "it is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal*

---

policies underlying § 1983 action: (1) "compensation of persons injured by deprivation of federal rights," *id.* at *2 (quoting *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011)); and (2) "prevention of abuses of power by those acting under color of state law," *id.* at *2 (quoting *Estate of Gilliam*, 639 F.3d at 1046–47).

As Judges Thrash and Calvert have noted, a similar anomalous result would occur if the Georgia apportionment statute were applied to TVPRA civil claims. *See K.M.*, 2024 WL 1217420, at *2; *W.K.*, 2024 WL 2892322, at *2.

*Co., 534* U.S. 438, 452 (2002) (cleaned up) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). And the intent and purpose of that omission is for TVPRA civil liability to be joint and several.

### B. Super 8's civil liability under the TVPRA is joint and several under the general common law of torts.

Federal legislation does not occur in a vacuum. When Congress creates a new tort action, it does so against the general common law of torts. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious liability rules" apply to discrimination claim under Fair Housing Act that was "in effect, a tort action"). When necessary, the general common law of torts will be "modifi[ed] or adapt[ed] . . . to carry out the purpose and policy of the statute." *Smith v. Wade*, 461 U.S. 30, 34 (1983). But for Congress "to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).[8]

For torts, the traditional damages rule is joint-and-several liability—not

---

[8] *See also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (cleaned up)).

apportionment. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("The conclusion that the FELA [Federal Employers' Liability Act] does not mandate apportionment is also in harmony with this Court's repeated statements that joint and several liability is the traditional rule.").[9] "A creature of tort law, joint and several liability 'applies when there has been a judgment against multiple defendants.'" *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220–21(1994)).[10] "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Id.* at 447–48 (citing Restatement (Second) of Torts § 875 (1977)[11]).

---

[9] The Supreme Court was unpersuaded by Norfolk's claim that "the modern trend is to apportion damages between multiple tortfeasors." 538 U.S. at 164. In rejecting that claim, the Court noted that some states still retain "full joint and several liability" and "even more" have it in certain instances." *Id.* The Court also emphasized that most states which have moved "away from the traditional rule" did so by "legislative enactments rather than judicial development of common-law principles." *Id.* at 164–65. Not treating new legislative developments as expressions of the "common law" makes sense because legislation of common-law topics is often said to abrogate the common law. *Cf. FDIC v. Loudermilk*, 826 S.E.2d 116, 129 (Ga. 2019) ("Georgia's apportionment statute, OCGA § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert.").

[10] To be clear, joint-and-several liability also applies where judgment is entered against one defendant for damages caused by the defendant and one or more nonparties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

[11] "Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for

### C.    Federal courts apply joint-and-several liability to federal causes of action.

Federal courts often apply the default rule of joint-and-several liability under the general common law of torts to federal causes of action.

### 1.    Civil-rights actions under 42 U.S.C. § 1983.

The Supreme Court has long found that § 1983 comprises "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 453 (1978)). When constitutional-rights violations occur, "the level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* Under that general common law, § 1983 liability is joint and several. *See Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989) (holding that the "federal rule of damages"—joint-and-several liability—was the right rule in a § 1983 action for wrongful discharge); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) ("Section 1983 liability must be understood against the background of the ordinary principles of tort law, where joint and several liability is the norm.").[12]

---

the entire harm." Restatement (Second) of Torts § 875 (1977).

[12] Where the defendant's liability is joint and several, a district court commits error by "distract[ing] the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party." *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722 (11th Cir. 1982).

### 2.    Discrimination claims under the Fair Housing Act.

Courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act. *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at \*1 (S.D. Fla. Apr. 11, 2012) (collecting cases).

### 3.    Federal Trade Commission Act and Telemarketing and Consumer Fraud and Abuse Prevention Act.

In an action by the Federal Trade Commission related to a fraudulent telemarketing scheme, the Eleventh Circuit held that "joint and several liability was available." *Fed. Trade Comm'n v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017). The court found that joint-and-several liability can arise either from the defendant's participation in a "common enterprise" or by providing "substantial assistance" to another person violating the telemarketing regulations. *Id.* at 1239–40. In holding that "substantial assistance" justified joint-and-several liability, the court emphasized that wrong's "resemblance to a well-established torts concept": "aiding and abetting," which "can result in joint and several liability." *Id.* at 1240. "In tort, the aider-abettor is liable to the injured party 'for the entire harm.'" *Id.* at 1241 (quoting Restatement (Second) of Torts § 875 & cmt. a (1979)). "The Restatement's pedigree on this topic," the court emphasized, "is well established." *Id.* at 1240 n.2.

### D.    Courts routinely apply the general common law of torts to establish the rule of decision under the TVPRA.

Last summer, Judge Calvert held that "[d]amages under the TVPRA are joint

and several." *W.K.*, 2024 WL 2892322, at *1 (bold omitted). While this is the only case to squarely address the issue of joint-and-several liability under the TVPRA, courts across the country—including this Court—routinely answer other questions on which the TVPRA is silent using the general common law of torts. Two reoccurring questions are (1) the availability of punitive damages and (2) the availability of vicarious liability.

### 1.     Punitive damages.

Victims of TVPRA violations can recover "damages and reasonable attorneys fees" in a civil action. § 1595(a). Does "damages" include "punitive damages"? The answer—based on the general common law of torts—is yes.

The Ninth Circuit was the first circuit to consider this question. The court found that the meaning of "damages" is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011). On the question of available remedies, the Supreme Court has held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 70–71 (1992), *quoted in Ditullio*, 662 F.3d at 1096.

To resolve the ambiguity and interpret "damages" in § 1595(a), the Ninth

Circuit used "common law principles."[13] *Id.* at 1098. The common law was the right place to look for guidance because "[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097. Relying on the Restatement (Second) of Torts § 908 (1979) to understand the "common law of torts," the court noted that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 1096–97.[14] Based on the background "common law principles" of torts and the "general rule" of *Franklin* authorizing the court to award "any appropriate relief" for a federal claim, the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595." *Id.* at 1098.

Since *Ditullio*, the only other circuit to address the availability of punitive damages under § 1595(a) agreed with the Ninth Circuit—and did so without reservation. *See Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) ("We thus

---

[13] The Ninth Circuit interpreted the 2003 version of the TVPRA.

[14] For over forty years, the Supreme Court has looked to this same section of the Restatement (Second) of Torts to define when punitive damages are available. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive *or his reckless indifference to the rights of others*." *Smith v. Wade*, 461 U.S. 30, 46–47 (1983) (quoting Restatement (Second) of Torts § 908(2); and citing *id.* cmt. b). Section 908(2) goes on to provide, "In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."

agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595."). Since *Ditullio* and *Francisco*, other circuits have affirmed punitive-damages awards for TVPRA victims without having to address the availability of such damages. *See Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming without discussion about availability punitive damages of $100,000 under § 1595); *Roe v. Howard*, 917 F.3d 229, 238, (4th Cir. 2019) (affirming without discussion about availability punitive damages of $2 million under § 1595); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages").

Federal district courts around the country likewise agree. *See, e.g.*, *Moore v. Rubin*, 724 F. Supp. 3d 93, 106–07 (E.D.N.Y. 2024) ("[Howard] Rubin's final argument is that the TVPA does not provide for punitive damages. Every Court of Appeals to address this issue (as well as a district court within this district) has held otherwise."); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (holding that "plaintiff deserves to recover punitive damages under the TVPRA and state human trafficking laws"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. . . . Punitive damages are therefore available under the TVPA.").

If the availability of punitive damages under the TVPRA remains an open question here, D.H. asks that the Court enter an order confirming their availability and adopting the standard in the Restatement (Second) of Torts § 908(2).

### 2.    Vicarious liability.

The TVPRA says nothing about vicarious liability or agency law. To answer whether the TVPRA permits vicarious liability and under what terms, courts around the country have applied the general common law of agency. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3185, 2023 WL 5531441, * 7 (S.D. Ohio Aug. 28, 2023) ("The TVPRA . . . does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps."); *J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287-91 (2003))); *see also Ramsbottom v. Ashton*, 3:21-cv-00272, 2022 WL 106733,

at \*18 (M.D. Tenn. Jan. 11, 2022) ("Federal common law applies when a court assesses alter-ego liability under a federal statutory scheme.").

This Court reached that very same conclusion in denying Red Roof's motion for summary judgment in *H.B. v. Red Roof Inns, Inc.* Order at 20–23, No. 1:22-cv-1181 (N.D. Ga. June 17, 2024), ECF No. 158.

*    *    *

Federal courts use the general common law to fill the gaps in the TVPRA's civil-remedy statute for questions about the availability of punitive damages and vicarious liability. Those answers provide substantive rules of decision that affect defendants' TVPRA civil liability. Given that, it would be "surprising" (to borrow Judge Thrash's word) if the same legal source—the general common law—did not provide the rule of decision about whether TVPRA civil liability is joint and several. D.H. thus asks the Court to hold that under the general common law of torts, Super 8's civil liability under the TVPRA is joint and several.

## II.    Because TVPRA liability is joint and several, the supremacy clause of the Constitution bars application of Georgia's apportionment statute to damages awarded under the federal TVPRA.

Because there can only be one award of damages in this case and Defendant argues that Georgia's apportionment statute must apply to Plaintiff's public nuisance claim (but see below), there are two applications of law that are in complete conflict with each other. No party can have both apportionment *and* joint and several liability

of a single injury. Fortunately, there is a longstanding rule that provides the answer to such conundrums.

The Constitution of the United States provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI., cl. 2.

> Consequently, federal law may preempt state law expressly or by implication. *Arizona v. United States,* —— U.S. ——, 132 S.Ct. 2492, 2500–01, 183 L.Ed.2d 351 (2012). Although Congress's "express statement on pre-emption is always preferable, the lack of such a statement does not end [the] inquiry." *PLIVA, Inc. v. Mensing,* —— U.S. ——, 131 S.Ct. 2567, 2577 n. 5, 180 L.Ed.2d 580 (2011). State law can be impliedly preempted by federal law in cases of field preemption and conflict preemption. Field preemption exists where Congress determines that a certain field must be regulated exclusively by the federal government. *Arizona,* 132 S.Ct. at 2501–02.[2] Conflict preemption, however, arises in instances where (1) "compliance with both federal and state regulations is a physical impossibility," or (2) "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 2501 (internal citations and quotation marks omitted). We use our judgment to determine when state law creates an unconstitutional obstacle to federal law, and "this judgment is informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Ga. Latino Alliance for Human Rights v. Governor of Ga.,* 691 F.3d 1250, 1263 (11th Cir.2012) (internal quotation marks omitted) (quoting *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000)).

*Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013).

Here, there is conflict preemption because it is physically impossible to apply both federal joint and several liability and any state apportionment statute. On the issue of damages and apportionment, the United States Supreme Court has held that

state law should not control a federal rule of decision because "[a] single nationwide rule would be preferable to one turning on state law, and the incorporation of state law would not give due regard to the federal interest in maintaining the apportionment of responsibility Congress devised[.]" *W. Virginia v. United States*, 479 U.S. 305, 308–09, 107 S. Ct. 702, 705 (1987).

As noted above, Congress determined that joint and several liability would apply to the civil cause of action in section 1595 of the TVPRA. Thus, a single nationwide rule in such cases is also appropriate. If Georgia apportionment law does apply to Plaintiff's public nuisance claim (it does not, see below), then the award of damages is in direct conflict. Georgia law cannot trump federal law requiring joint and several liability. "[W]hen state law creates an unconstitutional obstacle to federal law," the application of federal law is the constitutionally-mandated outcome. Thus, joint and several liability must apply to Plaintiff's damages in this case. *Fresenius Med. Care*, 704 F.3d at 939.

### III.   Super 8 is jointly and severally liable for the damages arising from D.H.'s public-nuisance cause of action under Georgia law.

On top of her TVPRA civil claim, D.H. has a Georgia cause of action for public nuisance against Super 8.[15] That cause of action accrued in September 2015

---

[15] Since at least 1863, the date of Georgia's first Code, a "public nuisance" that causes "special damage to an individual" has created "a right of action." Code of 1863, § 2940; *id.* § 2939 (defining "public nuisance" as "one which damages all persons who come within the sphere of its operations, though it may vary in it effects

when she was sex trafficked at the hotel.[16] And that accrual imbued not only D.H. with vested rights in her cause of action but also Super 8 with vested rights in its statutory defenses, such as apportionment. *Glover v. Colbert*, 437 S.E.2d 363, 364 (Ga. Ct. App. 1993); *see Brown v. Tucker*, 788 S.E.2d 810, 821 (Ga. Ct. App. 2016) (Defendant's "apportionment claim was an affirmative defense."), *disapproved of on other grounds by Miller v. Golden Peanut Co., LLC*, 891 S.E.2d 776 (Ga. 2023). Those are "substantive" rights that the Georgia General Assembly cannot change retroactively.

For almost 175 years, the Georgia Supreme Court has recognized that the General Assembly lacks the constitutional authority to change substantive rights created by statute. "A constitutional Act of the Legislature is equivalent to a contract, and when performed, is a contract executed; and whatever rights are thereby created, a subsequent Legislature cannot impair." *Franklin v. Mayor & Aldermen of Savannah*, 34 S.E.2d 506, 508 (Ga. 1945) (quoting *Winter v. Jones*, 10 Ga. 190, 196 (1851)). But the general presumption against retroactive application of legislation is

_____

on individuals"); *see also* O.C.G.A. §§ 41-1-3 (providing "a right of action" for "public nuisance" causing "special damage to an individual"), 41-1-2 (defining "public nuisance" as in the Code of 1863).

[16] "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained her action to a successful result." *Travis Pruitt & Associates, P.C. v. Bowling*, 518 S.E.2d 453, 454 (Ga. Ct. App. 1999) (citing *U-Haul Co. of W. Ga. v. Abreu & Robeson, Inc.*, 277 Ga. 497, 499 (Ga. 1981)).

deeply rooted in our Nation's history and tradition, embodying a "legal doctrine cen-turies older than our Republic." *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553, 560 (Ga. 2023) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).

Under the Georgia Constitution,[17] "legislation that affects substantive rights may operate prospectively only." *Daimler Chrysler Corp. v. Ferrante*, 637 S.E.2d 659, 661 (Ga. 2006) (quoting *Enger v. Erwin*, 267 S.E.2d 25, 26 (Ga. 1980)). To determine whether legislation must be applied prospectively, Georgia courts distin-guish between "substantive" and "procedural" law. In this context, "substantive" and "procedural" have well-settled meanings. "Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the meth-ods of enforcement of rights, duties, and obligations." *Id.* (quoting *Polito v. Holland*, 365 S.E.2d 273, 274 (Ga. 1988)).

In Georgia, "the legislature may not enact a statute to apply retrospectively in violation of our constitutional provision barring retroactive laws." *Hargis v. Dep't of Human Res.*, 533 S.E.2d 712, 713 (Ga. 2000). "Even when the General Assembly

---

[17] *See* Ga. Const. art. I, § 1, ¶ 10 ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of spe-cial privileges or immunities shall be passed."); *see also* O.C.G.A. § 1-3-5 ("Laws prescribe only for the future; they cannot impair the obligation of contracts nor, or-dinarily, have a retrospective operation.").

clearly provides that a law is to be applied retroactively, our Constitution forbids statutes that apply retroactively so as to 'injuriously affect the vested rights of citizens.'" *Deal v. Coleman*, 751 S.E.2d 337, 343 (Ga. 2013) (quoting *Bullard v. Holman*, 193 S.E. 586, 588 (Ga. 1937)).

Additionally, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Due Process Clause of the Georgia Constitution contain similar language prohibiting deprivations of property without due process of law.[18] Here, D.H. need not argue that the due-process protections of the Georgia Constitution are greater than those afforded by the U.S. Constitution. That's because causes of action are constitutionally protected species of property under either Constitution. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment."); *cf. Ga. Dep't of Med. Assistance v. Columbia Convalescent Ctr.*, 458 S.E.2d 635, 637 (Ga. 1995) ("A litigant does have a property interest in her cause of action that she may not be deprived of without due process.").

In 2005, the General Assembly amended the apportionment statute, O.C.G.A. § 51-12-33, while making a passel of so-called "tort reform" changes. 2005 Ga.

---

[18] U.S. Const. amend. XIV (No State shall "deprive any person of life, liberty, or property without due process of law."); Ga. Const. of 1983 art. I, § I, ¶ 1 ("No person shall be deprived of life, liberty, or property except by due process of law.").

Laws 1, 15, § 12. In doing so, the General Assembly made clear that the apportionment statute's 2005 changes "apply only with respect to causes of action arising on or after the effective date of this Act, and any prior causes of action shall continue to be governed by prior law." *Id.* at 18, § 15(b). Regardless of the wisdom of these changes to Georgia "substantive" law, they were at least constitutional because they applied only prospectively.

Seventeen years later, the General Assembly again amended the apportionment statute. 2022 Ga. Laws 802. This time, however, the General Assembly (for some reason) stated that the 2022 changes apply to causes of action filed after the Act's effective date (May 13, 2022)—regardless of whether those causes of action had already accrued. *Id.* at 802–03, §§ 2, 3. By stating that the 2022 changes applied to accrued-but-not-yet-filed actions, the General Assembly exceeded its constitutional authority.

The General Assembly's 2022 changes to the apportionment statute affect the "substantive" law. Quite plainly, the changes give Super 8 an affirmative defense that it did not have in September 2015 when D.H.'s cause of action accrued: the ability for the factfinder to apportion fault for D.H.'s damages to nonparties. The 2022 changes also deprive D.H. of her right to recover completely from a single defendant (assuming more than one proximate cause of her damages) in a case against a single defendant.

23

Georgia courts have held that other statutory changes with similar effects were substantive and thus could not constitutionally apply retroactively. Here, D.H. provides three examples. They are not alone.

### A.    Offer-of-settlement statute.

In 2005, the General Assembly added the Georgia offer-of-settlement statute to the Civil Practice Act. 2005 Ga. Laws 1, 5–6, § 5 (codified at O.C.G.A. § 9-11-68). But unlike the changes to the apportionment statute in that same Act, the General Assembly made the offer-of-settlement statute effective immediately in all cases. *Id.* at 18, § 15. The next year, the General Assembly amended the offer-of-settlement statute to make the statute available to both plaintiffs and defendants and to clarify some conditions under which a party might come to pay the opposing party's attorney's fees and costs. *See* 2006 Ga. Laws 446–47. Once again, the General Assembly made these changes effective immediately in all cases. *Id.* at 447, § 2.

In 2007, the Georgia Supreme Court held that the offer-of-settlement could not apply retroactively to make a plaintiff liable for the defendant's attorney's fees and expenses because the plaintiff's cause of action accrued "more than three years" before the offer-of-settlement statute existed. *Fowler Props., Inc. v. Dowland*, 646 S.E.2d 197, 199–200 (Ga. 2007). That the General Assembly "explicitly intended" the statute to have "retroactive application" was irrelevant because "the legislature may not enact a statute to apply retrospectively in violation of our constitutional

24

provision barring retroactive laws." *Id.* at 200 (quoting *Hargis v. Dep't of Human Res.*, 533 S.E.2d 712, 713 (Ga. 2000)).

### B.    Collateral-benefits evidence.

In 1987, during another spate of "tort reform" legislation, the General Assembly tried to make evidence of collateral-source payments from certain sources admissible. 1987 Ga. Laws 915, 917 § 3 (codified as O.C.G.A. § 51-12-1(b)).

In 1988, the Georgia Supreme Court examined whether this new law constituted a "substantive" change in the law. Even though the statute only made it *possible* for the jury to use the newly admissible evidence of collateral benefits to reduce the plaintiff's damages, the Georgia Supreme Court held that this "works a substantive change in the law governing collateral benefits" and thus had to be "given prospective effect only." *Polito v. Holland*, 365 S.E.2d 273, 275 (Ga. 1988).[19]

### C.    Repeal of a statutory cause of action.

In 1979, the General Assembly modernized Georgia's family and domestic relations law. 1979 Ga. Laws 466. Part of this modernization included the repeal of the statute giving husbands (but not wives) the right to sue for adultery, alienation of affections, or criminal conversion.[20] *Id.* at 496–97, § 46.

---

[19] The Georgia Supreme Court later held that this statutory change regarding the admissibility of collateral-benefits evidence was unconstitutional in tort cases. *See Denton v. Con-Way S. Express, Inc.*, 402 S.E.2d 269, 270–71 (Ga. 1991).

[20] This right of action was codified in the Code of 1863, § 2950. It remained

But before that statutory repeal (years before, in this story), Charles Hauser's wife (Laura Hauser) had her affections alienated by Earl Brown—allegedly, of course. Earl and Laura supposedly carried on an affair for several years. After their alleged affair ended and *after* the General Assembly repealed the statute giving husbands the right to sue for adultery or alienation of affections (and after Charles and Laura's divorce was final), Charles sued Earl. To no one's surprise, Earl challenged the case's validity given the statutory repeal.

In 1982, the Georgia Supreme Court heard the case and allowed Charles to proceed to trial on his claim for adultery and alienation of affections. In doing so, the Georgia Supreme Court held that "the important constitutional question is not when the suit was filed; it is whether Hauser's right to bring an action for alienation of affections had 'vested at the time of the repeal of the cause of action by the General Assembly.'" *Brown v. Hauser*, 292 S.E.2d 1, 2 (Ga. 1982) (quoting *Enger v. Erwin*, 267 S.E.2d 25, 26 (Ga. 1980)). Because his right vested with the accrual of his cause of action (when Earl allegedly wooed Laura away and they started an affair), Charles could take his statutory claim to the jury despite the statute's repeal before he sued. *Id.*

\*     \*     \*

---

unchanged until it was abolished in 1979.

Under the Georgia apportionment statute in effect in September 2015 when D.H.'s cause of action for public nuisance accrued, Super 8 cannot apportion fault for D.H.'s damages to any nonparty. The Georgia Supreme Court made that pellucidly plain in *Alston & Bird*. 862 S.E.2d at 301–02. The General Assembly changed the apportionment statute the next year and tried to make those changes applicable to all cases filed after May 13, 2022.

But applying that change to causes of action that had already accrued but had not yet been filed is unconstitutional. *Brown* makes clear that the constitutionally significant date is not the date of *filing* but rather the date of *accrual*. 292 S.E.2d at 2. And *Fowler Properties* makes clear that even an explicit statement of retroactive intent by the General Assembly cannot make an unconstitutional change to "substantive" law apply retroactively. 646 S.E.2d at 199–200. Thus, this Court should hold that Super 8's liability for D.H.'s public-nuisance claim under Georgia law is joint and several because the 2022 changes cannot apply retroactively.

## CONCLUSION

D.H. asks the Court to hold that the TVPRA provides for joint-and-several liability. Because D.H.'s cause of action for public nuisance accrued before the May 13, 2022 changes to the Georgia apportionment statute, D.H. asks the Court to hold that § 51-12-33(b) doesn't apply to her public-nuisance claim against Super 8 and thus Super 8 cannot ask the jury to apportion damages to any nonparties.

Respectfully submitted on June 17, 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile