IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| JANE DOE (K.E.C.), an individual § § *Plaintiff,* § § VS. § § G6 HOSPITALITY, LLC; § G6 HOSPITALITY IP, LLC; § G6 HOSPITALITY PROPERTY, LLC; § G6 HOSPITALITY PURCHASING, LLC; § G6 HOSPITALITY FRANCHISING, LLC; § MOTEL 6 OPERATING, LP; § AESHA, LLC; CENTURY LODGING § LLC; PAT SERVICING LLC; and § AMITA KUNAL LLC § § *Defendants.* § | CIVIL ACTION NO. 1:23-CV-00270 JUDGE MARCIA A. CRONE |

## ORDER DENYING DEFENDANT AESHA, LLC'S
## MOTION FOR LEAVE TO DESIGNATE A RESPONSIBLE THIRD PARTY

Before the Court is Defendant Aesha, LLC's ("Aesha") Motion for Leave to Designate a Responsible Third Party.[1] [Dkt. 109]. Aesha filed the pending motion in this Court on October 9, 2024. *Id.* Plaintiff Jane Doe (K.E.C.) ("KEC") filed her Response on October 22, 2024. [Dkt. 114]. Aesha subsequently filed its Reply on October 29, 2024. [Dkt. 115]. KEC did not file a Sur-Reply and the window for doing so has closed. *See* E.D. Tex. Loc. Civ. R. 7(f). The pending motion is now ripe for review.

For the reasons stated below, the Court **DENIES** Aesha's motion.

---

[1] The other defendants in this matter include Defendants G6 Hospitality LLC, G6 Hospitality IP, LLC, G6 Hospitality Property LLC, G6 Hospitality Purchasing LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, L.P. (collectively, "G6 Defendants"); Defendant Century Lodging, LLC ("Century"); Defendant Pat Servicing, LLC ("Pat Servicing"); and Defendant Amita Kunal, LLC ("Amita Kunal"). Century and Amita Kunal are the only defendants who join in Aesha's motion. *See* [Dkts. 111 (Century's motion for joinder), 113 (Amita Kunal's notice of joinder)]. The court will construe Century's motion as a notice. Since these notices do not present any new arguments independent of Aesha's motion, the Court centers its analysis on the motion.

## I. BACKGROUND

This is a sex trafficking case brought under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.* The Court walked through the facts of this case in several prior Orders, so it will not regurgitate them in full. *See* [Dkts. 106, 107]. However, it will reiterate the basics.

Between 2012 and 2016, K.E.C. was allegedly trafficked at the Studio 6 hotel located at 2660 Interstate 10 E Beaumont, TX 77702, which was owned by Aesha. [Dkt. 25 at ¶¶ 18, 33]. For the same length of time, K.E.C. was allegedly trafficked at the Studio 6 hotel located at 3000 Jimmy Johnson Blvd., Port Arthur, TX 77642 ("Port Arthur Studio 6"). *Id.* at ¶ 34. The Port Arthur Studio 6 had the following chain of franchisee ownership. Amita Kunal owned and operated the hotel until August of 2012. *Id.* at ¶¶ 21–22. Pat Servicing owned and operated the location from August of 2012 to April of 2014. *Id.* at ¶ 22. And finally, Century owned the hotel starting in April of 2014. *Id.* at ¶¶ 19, 22. At a high level, KEC alleges that Aesha, Amita Kunal, Pat Servicing, and Century (collectively, "Franchisee Defendants") either knew or should have known of her trafficking and that they created a favorable environment for her traffickers to conduct their business. KEC brought claims against the Franchisee Defendants for perpetrator liability and beneficiary liability under 18 U.S.C. § 1595(a). *Id.* at ¶¶ 100, 103.

All the Franchisee Defendants except Pat Servicing[2] filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Dkts. 30, 31, 44]. On September 20, 2024, this Court issued an Order denying these motions. [Dkt. 106 at 20]. On October 8, 2024, Aesha filed its Answer to KEC's First Amended Complaint. [Dkt. 108].[3] A day later, it filed the pending motion. [Dkt. 109].

---

[2] Although Pat Servicing has been served, it has yet to appear in this matter. *See* [Dkt. 70].

[3] Century filed its Answer on October 16, 2024. [Dkt. 110]. Amita Kunal never filed an Answer. *See* FED. R. CIV. P. 12(a)(4)(A) (emphasis added) (providing that "if the court denies [a motion to dismiss] . . . the responsive pleading must

Aesha learned of the identity of KEC's trafficker from a letter sent by Plaintiff's counsel on August 6, 2024.[4] [Dkt. 109 at 1]. Equipped with this knowledge, Aesha now moves to designate KEC's trafficker as a responsible third party under Tex. Civ. Prac. & Rem. Code § 33.004. Aesha argues that it satisfies the timing requirements of the statute and that it has brought forth sufficient facts about the responsibility of KEC's trafficker to warrant a designation.

## II.  LEGAL STANDARDS

### a.  Motion for Leave to Designate a Responsible Third Party

Under Texas law, a defendant may move for leave to designate a person as a responsible third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a) (hereinafter, "Chapter 33"). A responsible third party is someone that a party alleges "to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." *Id.* § 33.011(6); *see also Ellis v. United States*, 673 F.3d 367, 372 n.3 (5th Cir. 2012). Under Chapter 33, a defendant may designate a responsible third party in "any cause of action *based on tort* . . . [or] any action brought under the Deceptive Trade Practices-Consumer Protection Act . . . in which a defendant . . . or responsible third party is found responsible for a percentage of the harm for which relief is sought." Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a) (emphasis added).

The trial court "shall" grant leave to designate the named person as a responsible third party unless another party (1) files an objection on or before the fifteenth day after service of the motion and (2) the objecting party establishes that "the defendant did not plead sufficient facts concerning

---

be served *within 14 days* after notice of the court's action."). Although both Aesha's and Century's Answers were filed outside this fourteen-day window, and Amita Kunal never filed an Answer, relief might be available. *See* FED. R. CIV. P. 12(a)(4) (emphasis added) (stating that "*[u]nless the court sets a different time*, serving a motion under this rule alters these periods as follows[.]").

[4] This letter has not been docketed to the Court's knowledge.

3

the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." Tex. Civ. Prac. & Rem. Code Ann. § 33.004(f), (g)(1).

Responsible third parties are not formally joined under Chapter 33, but rather are "only designated as being responsible without being made parties to the suit." *Withers v. Schneider Nat'l Carriers, Inc.*, 13 F. Supp. 3d 686, 688 (E.D. Tex. 2014) (citing *Muniz v. Stanley*, No. L-06-cv-126, 2007 WL 1100466, at *2 (S.D. Tex. Apr. 11, 2007); *Werner v. KPMG*, 415 F. Supp. 2d 688, 692 (S.D. Tex. 2006)); *see also* Tex. Civ. Prac. & Rem. Code § 33.004(h). The application of Chapter 33 can affect a plaintiff's recovery since, when it applies, the trier of fact must calculate the percentage of responsibility of each claimant, defendant, and designated responsible third party. Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a).

### III. DISCUSSION

There is a matryoshka doll of issues that counsel against granting Aesha's motion. First, there is no legal authority indicating that Chapter 33 applies in a pure federal question case. Second, even if the first issue was placed aside, apportionment under Chapter 33 clashes with the TVPRA's language. And third, allowing the designation of a responsible third party would create puzzling inconsistencies in light of Texas's analogue to the TVPRA and the decisions reached by other courts across the country.

#### a. Chapter 33 in Pure Federal Question Cases

This case arises under the TVPRA; no state law claims are alleged in the operative Complaint. *See* [Dkt. 25 at ¶ 23]. Even Aesha admits that this makes it unclear whether Chapter 33 applies in this case. But it doesn't fully concede; Aesha argues that, since Chapter 33 has been applied in cases involving federal causes of action, the Court should apply it here. The Court disagrees.

The weight of authority in this circuit indicates that Chapter 33 does not apply in cases arising *solely* under a federal statute. *See Ramirez v. Abreo*, No. 5:09-CV-189-C, 2010 WL 11565455, at *3

4

(N.D. Tex. May 27, 2010) (emphasis added) ("*Because only federal law can govern federal claims*, section 33.004 can have no applicability to claims asserted under § 1983; and, to the extent the Defendants argue otherwise, their arguments are not persuasive."); *see also DCA Design v. Bellavida Custom Homes LLC*, No. CV H-17-3314, 2018 WL 8755529, at *2 n.1 (S.D. Tex. Dec. 5, 2018) (citation omitted); *see also Snearl v. City of Port Allen*, No. CV 21-455-JWD-RLB, 2024 WL 4701885, at *4 (M.D. La. Nov. 6, 2024) (citing *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("When considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of a privilege.")); *see also Nunez v. City of Corpus Christi, Tex.*, No. 2:12-CV-00092, 2013 WL 164045, at *1 (S.D. Tex. Jan. 14, 2013) ("Because excessive force claims are federal claims, they are not Texas torts and are not relevant to the [Chapter 33] analysis.").

TVPRA-specific cases from outside this circuit also cast doubt on Aesha's position. *See K.M. v. Reva Properties, LLC*, No. 1:22-CV-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (citations omitted) ("[T]he Court does not see any reason why a Georgia apportionment statute would control whether apportionment is allowed in a case being heard in federal court under federal question jurisdiction without any state law claims alleged."); *see also Ditullio v. Boehm*, No. 3:09-cv-00113 JWS, 2010 U.S. Dist. LEXIS 148772, at *4 (D. Alaska Feb. 23, 2010) ("Ditullio argues that Section 1595 does not provide for the application of state law, and therefore state apportionment rules do not apply. The court agrees."); *see also W.K. v. Red Roof Inns, Inc.*, No. 1:20-CV-05263-VMC, 2024 WL 2892322, at *4 (N.D. Ga. June 10, 2024) (holding that Georgia's apportionment statute would apply to the plaintiffs' state-law negligence claim, but not their TVPRA claim).

The cases Aesha cites are unpersuasive—in some of them, the court had both federal question jurisdiction *and* diversity jurisdiction. *See Guadian v. Debtblue LLC*, No. EP-23-CV-329-KC, 2024 WL 89446, at *1–2 (W.D. Tex. Jan. 8, 2024) (applying Chapter 33 in a diversity case with both federal and state law claims); *see also Hillman v. City of McKinney*, No. 4:11-CV-150, 2012 WL

5

2054017, at *1 (E.D. Tex. June 5, 2012) (Mazzant, J.) (same). And the lone case that solely involved federal question jurisdiction favors KEC. *See Porter v. Mgmt. & Training Corp.*, No. 9:16-CV-123, 2019 WL 6492595, at *3 (E.D. Tex. Dec. 3, 2019) (emphasis added) (stating that "some district courts have [ ] concluded that the designation of a responsible third party under § 33.004 . . . is [ ] permissible in diversity cases . . . [but that] [t]he same is not true . . . for suits involving causes of action *arising under federal statutory law only* like the instant case.").[5]

For these reasons, the Court is unconvinced that Chapter 33 has any relevance to this case.

b. **Chapter 33 & the TVPRA's Language**

Even if Chapter 33 is somehow relevant to pure federal question cases, it appears incompatible with the language of the TVPRA. *See Porter*, 2019 WL 6492595, at *4.

Under Chapter 33, a defendant can offload responsibility onto a responsible third party at trial, thereby diminishing the plaintiff's recovery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a). This is the direct opposite of joint and several liability, which "applies when there has been a judgment against multiple defendants" and makes each defendant "liable for the *entire* amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017) (emphasis added). Accordingly, if federal joint and several liability law applies to the TVPRA, Chapter 33 cannot.

---

[5] Admittedly, this last case did "stop[ ] short of announcing a categorical rule that Texas' proportionate liability scheme is never applicable in federal question cases applying federal statutory law." *Porter*, 2019 WL 6492595, at *4. Instead, the court decided the case on a narrower ground and held that the application of Chapter 33 "would be inconsistent with federal law" and would allow the defendants "to avoid . . . fully compensating plaintiff for his injuries." *Id.* The Court is unsure whether such an expression of judicial humility can be alchemized into firm support for Aesha's position. But regardless, this language actually benefits KEC for the reasons explained in the following section.

6

The TVPRA's civil remedy was added in 2003.[6] See Pub. L. No. 108–193, 117 Stat. 2878 (2003). In 2008, it was expanded to encompass beneficiaries in addition to direct perpetrators.[7] See Pub. L. No. 110–457, 122 Stat. 5044 (2008); see 18 U.S.C. § 1591(a)(1)-(2) (outlining the requirements for perpetrator liability). In its current form, the TVPRA's civil provision states the following:

> An individual who is a victim of a violation of this chapter *may bring a civil action* against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . *and may recover damages and reasonable attorneys fees*.

18 U.S.C. § 1595(a) (2023) (emphasis added). While the TVPRA is silent about apportionment, the conclusion that civil liability is joint and several flows from the text, the broader statutory structure, and the general common law[8] of torts.

"Joint and several liability is the traditional rule" for federal torts.[9] *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 164–65 (2003); *see also Thompson v. Johnson*, 180 F.2d 431, 434 (5th Cir.

---

[6] *See* 18 U.S.C. § 1595(a) (2003) ("An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.").

[7] *See* 18 U.S.C. § 1595(a) (2008) (emphasis added) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits*, financially or by receiving anything of value *from participation in a venture* which that person knew or should have known has engaged in an act in violation of this chapter[.]).

[8] Courts have applied traditional common law principles when deciding that punitive damages were available under the TVPRA. *See, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017); *see also Francisco v. Susano*, 525 F. App'x 828, 831–35 (10th Cir. 2013).

[9] Aesha insists that this is out of step with the modern trend and draws on the Third Restatement of Torts (which purportedly captures the state of the law at the time the TVPRA was enacted). But even if this is true, Aesha has won only half the argument. It must go a step further and demonstrate that *the Court* must channel this modern trend in interpreting the TVPRA. *Norfolk* flips this on its head; it is *Congress's* job to modernize statutes—and when it doesn't, the traditional rules control:

> At any rate, many States retain full joint and several liability, even more retain it in certain circumstances, and *most of the recent changes away from the traditional rule have come through legislative enactments rather than judicial development of common-law principles. Congress, however, has not amended the FELA*.

*Norfolk*, 538 U.S. at 138 (emphasis added). The same principle applies to Aesha's argument that foreclosing the use of Chapter 33 would create unfairness: "To hold an allegedly negligent small business owner responsible for another actor's

7

1950) (listing, among "settled principles of law," the rule that "persons who aid, abet, or procure the commission" of a tort are jointly and severally liable where the aider-abettor is "present, assist[s], or participate[s]" in the tort and that "where two or more persons engage in a common enterprise, they are jointly liable for wrongful acts done in connection with that enterprise"); *see also FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017) (applying joint and several liability to the Federal Trade Commission Act); *see also Porter*, 2019 WL 6492595, at *4 (collecting cases) (referencing "the weight of authority holding theories of comparative negligence and contribution inapplicable to federal constitutional rights violations"). For Congress "to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993). Silence doesn't suffice. *See id.* "Once Congress *has relied upon conditions that the courts have created*, we are not as free as we would otherwise be to change them." *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 273 (1979) (emphasis added).

The TVPRA's text directs that plaintiffs "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). This is a far cry from abrogation of the traditional rule of joint and several liability.

The broader statutory scheme also confirms that § 1595(a) does not abrogate the traditional rule. For example, a neighboring provision addresses "Mandatory restitution" in criminal TVPRA cases. *See* 18 U.S.C. § 1593. It provides that, "[n]otwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court *shall order restitution* for any *offense* under this chapter." *Id.* § 1593(a) (emphasis added). There is a cross-reference: "An order of restitution under [§ 1593] shall be issued and enforced *in accordance with section 3664*." *Id.* § 1593(b)(2) (emphasis added). Significantly, 18 U.S.C. § 3664(h) provides courts with the option of

---

intentional criminal conduct raises significant concerns of constitutionality and fundamental fairness and *makes no sense from a policy standpoint*." [Dkt. 115 at 2 (emphasis added)]. This issue should be ventilated in Washington D.C., not the Eastern District of Texas.

8

"mak[ing] each defendant liable for payment of the full amount of restitution" or "*apportion[ing] liability among the defendants.*" *Id.* (emphasis added).

Congress clearly knew how to provide for apportionment of liability. The contrasting silence in § 1595(a) speaks volumes and shows that Congress did not intend to disturb the traditional rule. *See K.M.*, 2024 WL 1217420, at *2 (stating that "the Court is deeply skeptical that Reva will ultimately be able to raise the affirmative defense of apportionment" after discussing § 1593(b)(2) and § 3664(h)); *see also W.K.*, 2024 WL 2892322, at *2 (providing a similar analysis); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The Court is also concerned that the application of Chapter 33 would chafe against the purpose of the TVPRA's civil provision, as revealed by its plain language. *See United States v. Locke*, 471 U.S. 84, 95 (1985) (internal quotation marks omitted) (citing *Richards v. United States,* 369 U.S. 1, 9 (1962)) ("[D]eference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that the legislative purpose is expressed by the ordinary meaning of the words used."). The TVPRA's civil provision expands the scope of liability to include those who "knowingly benefit[ ], or attempt[ ] or *conspire*[ ] *to benefit* . . . from *participation in a venture* which that person knew or should have known has engaged in an act in violation of this chapter[.]" *See* 18 U.S.C. § 1595(a) (emphasis added). The word "conspire" and the phrase "participation in a venture" show that Congress contemplated violations brought about by concerted efforts. *See Conspire*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added) ("To engage in conspiracy; *to join* in a conspiracy."); *see also Conspiracy*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added) ("An agreement *by two or more persons* to

9

commit an unlawful act, coupled with an intent to achieve the agreement's objective[.]"); *see also Venture*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An undertaking that involves risk; esp., a speculative commercial enterprise."); *see also K.M.*, 2024 WL 1217420, at *2 ("Given that an essential element of this cause of action is 'participation in a venture,' it is foreseeable (necessary, in fact) that other individuals and/or entities would be involved in the alleged wrongdoings for these types of claims."). And yet there is no mention of apportionment; this signposts Congress's design to hold all beneficiaries jointly and severally liable. Moreover, if the TVPRA's beneficiary liability provision contemplated defendants using Chapter 33 as Aesha requests, that arguably would nullify, or at least diminish, the impact of the word "or" in § 1595(a)—beneficiaries could just designate a trafficker (who are "perpetrators" under the TVPRA[10]) and evade liability, potentially wholesale.[11] *See* 18 U.S.C. § 1595(a) (emphasis added) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or* whoever knowingly benefits, . . . ."). This would essentially warp § 1595(a) back to its 2003 predecessor. *See* 18 U.S.C. § 1595(a) (2003) (omitting beneficiary liability); *see also Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 226 (2015) (citations omitted) (internal quotation marks omitted) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant.").

Other courts agree that the use of Chapter 33 or other state-law apportionment devices would undercut the purpose of the TVPRA's beneficiary liability provision. *See K.M.*, 2024 WL 1217420, at *2 ("It would also be surprising that Congress intended to permit apportionment without saying so

---

[10] *See* 18 U.S.C. § 1591(a).

[11] Although Aesha never explicitly stated that it seeks to pin 100% of the blame on KEC's trafficker, the Court doesn't see a reason why it wouldn't attempt to, especially given the language in its motion:"[T]he trafficker as identified in Plaintiff's Letter *is the individual who actually did the trafficking*, according to Plaintiff . . . Plaintiff's claim against Aesha is *entirely dependent* on her allegation that she was trafficked at Aesha's hotel in violation of the TVPRA." [Dkt. 109 at 3 (emphasis added)].

10

since . . . allowing civil beneficiary defendants to apportion fault to traffickers . . . and other beneficiaries would drastically undermine the effect of the civil beneficiary provision."); *see also W.K.*, 2024 WL 2892322, at *2 ("the Court notes that apportionment would frustrate the purpose of the TVPRA's civil beneficiary provision."); *see also Porter*, 2019 WL 6492595, at *4 (citing *Moran v. Summers*, 2016 WL 1610611, at *2 (W.D. Tex. Apr. 20, 2016)) (holding that Chapter 33 "would frustrate the two primary goals of [§ 1983]—compensation and deterrence"). And courts have arrived at similar conclusions in cases where franchisor-defendants attempted to bring third-party complaints for indemnification and contribution against franchisees under the TVPRA. *See J.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3776, 2025 WL 50899, at *2 (S.D. Ohio Jan. 8, 2025) (citing *A.W. v. Best W. Int'l, Inc.*, No. 2:21-CV-4934, 2024 WL 1340264, at *2 (S.D. Ohio Mar. 29, 2024); and *T.P. v. Best W. Int'l, Inc.*, No. 2:21-CV-4933, 2024 WL 1347451, at *2 (S.D. Ohio Mar. 29, 2024)) (explaining that defendants cannot bring these claims since (i) the TVPRA does not expressly provide for them, (ii) hotel chains are not the intended beneficiaries of the TVPRA, and (iii) Congress amended the TVPRA several times and declined allow such claims).

For these reasons, the Court concludes that Chapter 33 is incompatible with the language of the TVPRA and the purpose conveyed by the same.

### c. Inconsistency with the Texas TVPRA and Other Courts

The Court is persuaded by KEC's argument that the application of Chapter 33 would conflict with Texas's own equivalent of the TVPRA ("Texas TVPRA").[12] Although KEC does not assert a claim under the Texas TVPRA, the Court finds it relevant to the pending motion. Under the Texas TVPRA,

> A person who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person and is found liable under this chapter or other law for any amount of damages arising from the trafficking

---

[12] Aesha did not address this argument in its Reply.

11

> *is jointly liable with any other defendant for the entire amount of damages arising from the trafficking.*

See Tex. Civ. Prac. & Rem. Code Ann. § 98.005 (2009) (emphasis added).[13] Under its clear language, the Texas TVPRA bars the use of Chapter 33. *See id.* But under Aesha's argument, Chapter 33 can still be used under the TVPRA, even though it cannot be used under the Texas TVPRA. Given the analysis above, the Court finds it hard to believe that the Texas TVPRA is more hostile towards a Texas-specific procedural device than the TVPRA. *See K.M.*, 2024 WL 1217420, at *2 ("Reva has not provided (and the Court has not found) a single case in which a court has permitted a TVPRA civil beneficiary defendant to apportion damages to nonparties . . . It would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so."). The more logical conclusion is that they are both on the same page.

The Court is also convinced that a ruling in Aesha's favor would inject confusion into TVPRA jurisprudence. Three cases across two states have already decided that state apportionment statutes do not apply under the TVPRA. *See Ditullio*, 2010 U.S. Dist. LEXIS 148772, at *4 (holding that Alaska's apportionment statute does not apply to the TVPRA); *see also W.K.*, 2024 WL 2892322, at *1 (holding that Georgia's apportionment statute does not apply to the TVPRA); *see also K.M.*, 2024 WL 1217420, at *2 (holding the same).[14] Although all these cases are persuasive, the lack of Fifth Circuit authority on § 1595(a) has compelled the Court to scavenge for guidance in other circuits. *See* [Dkt. 106 at 6 & n.7]. If it were to rule in Aesha's favor, the Court would be announcing, with a cracking voice, that Chapter 33 applies to the TVPRA, even though it substantially resembles Alaska's and Georgia's apportionment statutes, which have been held to *not* apply. *Compare* Tex.

---

[13] The clear reference to joint and several liability in the Texas TVPRA does not undermine the Court's analysis in the previous section. The Texas TVPRA simply makes explicit what the TVPRA chose to leave implicit. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 98.005, *with* 18 U.S.C. § 1595(a). The Texas TVPRA sings the lyrics while the TVPRA opted to hum the same song. And Congress is free to make this choice.

[14] To the Court's knowledge, these are the only three cases in the country addressing the issue.

Civ. Prac. & Rem. Code Ann. § 33.004, *with* O.C.G.A. § 51-12-33 *and* Alaska Stat. Ann. § 09.17.080. The Alaska and Georgia district courts got the law right; the Court will not tread on this germinating consensus.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Aesha, LLC's Motion for Leave to Designate a Responsible Third Party [Dkt. 109] is hereby **DENIED**.

**SIGNED this 16th day of June, 2025.**

_____
Michael J. Truncale
United States District Judge