UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

D.H.,

      Plaintiff,

v.

TUCKER INN INCORPORATED,
d/b/a SUPER 8 BY WYNDHAM,

      Defendant.

CIVIL ACTION FILE

NO. 1:22-CV-03419-JPB

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
CONSOLIDATED MOTIONS IN LIMINE**

Though broken up into several categories, Defendant's request to the Court is quite simple. Defendant asks the Court to exclude all the evidence in the case, except for some limited testimony from the Plaintiff herself. Yet even Plaintiff's testimony, Defendant claims, should not include anything about the injuries she suffered or what the hotel "should have seen" of her. To make these extreme arguments, Defendant misrepresents the facts of the case to the Court. Defendant's motions in limine should be denied.

## I.    Defendant's MIL No. 1: Alleged Trafficking Incidents Involving Individuals Other Than Plaintiff

Defendant asks the Court to exclude the testimony of *seven* other victims who were sold for sex at Defendant's hotel because their sex trafficking (including the

sex trafficking of several minors) at the hotel is supposedly "not relevant" and therefore inadmissible. Defendant makes only two arguments in support.

As to Plaintiff's TVPRA claim, Defendant's only argument is that because the Eleventh Circuit said in dicta that proof "as to the Plaintiff" is needed, all evidence that doesn't directly involve the Plaintiff must be irrelevant. This is wrong for at least three reasons.

*First,* evidence of other incidents—especially seven other incidents of sex trafficking at Defendant's hotel—is relevant to proving "as to the Plaintiff" facts that are mentioned in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 720 (11th Cir. 2021). Indeed, *Doe #1* shows this clearly. In that case, while finding that the defendant-franchisors did not participate in the specific ventures the plaintiffs pled ("sex trafficking ventures"), the Eleventh Circuit considered incidents of sex trafficking at the locations that did not involve the plaintiffs. The Eleventh Circuit considered reports of "widespread prostitution and crime" and police responses to prostitution calls as well as that "a single sex trafficker completely controlled the third floor" at one hotel. *Id.* None of those allegations involved the *Doe* plaintiffs themselves, yet the Eleventh Circuit considered those facts in deciding that case.



*Third,* Plaintiff's Motion in Limine About Other Incident Evidence provides a more fulsome explanation of why this evidence of other trafficking incidents is relevant and admissible. Rather than repeat that discussion here, Plaintiff incorporates it by reference. Dkt. No. 183. In short, evidence of other incidents of sex trafficking, prostitution, pandering, and incidents related to sex crimes are relevant and

---

[1] Plaintiff files this response under seal as the referenced Summary Judgment Order is sealed.

admissible to prove Defendant's actual or constructive knowledge, participation in a venture, as impeachment evidence, to prove the existence of the public nuisance, and as evidence of Defendant's *modus operandi*. *Id.* As to *modus operandi*, that evidence rests on a longstanding principle that evidence of other incidents is admissible to prove *another* incident (i.e., "as to the Plaintiff") was committed by a party.[2] *Treminio v. Crowley Mar. Corp.*, No. 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024), *reconsideration denied,* No. 3:22-cv-174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024) (Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge."); *see also* Dkt. No. 183 at 10–11 (collecting cases).

As to Plaintiff's public-nuisance claim, Defendant's only argument for excluding the evidence of these seven other sex-trafficking victims is odd. Defendant contends that because the other sex-trafficking victims involve different sex traffickers and those *traffickers* were not themselves harmed by the nuisance, Plaintiff's nuisance claim is disproven. Setting aside that those are things the jury must decide (and setting aside whether anyone who commits a federal felony like sex trafficking

---

2 Even the case cited by Defendant, *C.B. v. Naseeb Invs., Inc.*, which is currently on appeal, cites a great deal of evidence beyond that plaintiff's trafficking. 748 F. Supp. 3d 1338, 1361 (N.D. Ga. Sept. 12, 2024) (describing history of prostitution and prior incidents of sex trafficking). Though that case was dismissed, it in no way stands for the proposition that "other incident" evidence is inadmissible. In fact, it shows the opposite, for the district court explicitly considered that evidence.

is not harmed by now being a criminal), the public nuisance in this case is made up of the criminals operating in the "environment that was hospitable to trafficking"— Defendant's hotel. The hotel and these seven victims' sex traffickers *are* the public nuisance. And evidence that they co-exist in a mutually beneficial, but illegal, arrangement is admissible in this case because it is the crux of public nuisance itself. Dkt. No. 183 at 8–9.

## II.    Defendant's MIL No. 2: Other Incidents or Crimes Occurring at the Super 8

For the reasons above, and as further explained in Dkt. No. 183, evidence of other crimes or incidents at Defendant's hotel that do not involve Plaintiff are relevant and admissible to prove identity, knowledge, participation, lack of mistake, pattern and practice, *modus operandi*, nuisance, and impeachment.

A few additional points are worth briefly making. Evidence of other sex and violent crimes does have a tendency to make the facts in this case more or less probable. For example, Defendant's manager, Umesh Patel has testified that that prostitution can attract violent crime:

```
 7     Q    And prostitution can also attract violent
 8  crime, too, correct?
 9          MR. LUDWIG: Object to form.
10  BY THE WITNESS: (Through the Interpreter)
11     A    Yes.
12     Q    Okay.  And that can involve things like
13  guns, knives, things of that nature?
14     A    Yes.
```

Dkt. No. 115-2 at 63:7–14. Mr. Patel also admitted that if the police are conducting

prostitution stings at a hotel, then prostitution is more than likely happening there.

```
 8    Q    Okay.  Did you -- is it reasonable to
 9  assume that if the police department is doing drug
10  stings and prostitution stings at your hotel, then
11  those types of actions are more than likely going on
12  at your hotel prior to the shooting?
13        MR. LUDWIG: Object to form.
14  BY THE WITNESS:
15    A    (The Witness) Yeah.
16        THE INTERPRETER: Yes.
```

Dkt. No. 115-2 at 99:8–15. Further, there were twenty-four stings and arrests for sex

crimes at Defendant's hotel before Plaintiff's trafficking there. Thus, Defendant's

manager and co-owner admitted that those twenty-four arrests indicate that prostitu-

tion was "more than likely" happening at the hotel and that prostitution leads to vi-

olent crime.

From this testimony, a jury could readily find that such violent crime includes

not only the sex trafficking of Plaintiff and the seven witnesses above but also the

2012 murder of a man who was so badly mutilated that paramedics could not deter-

mine his race or sex, the attempted rape of a sex-trafficking victim by a serial rapist,

the shooting of two men, the stabbing of Vera Williams (over 100 times!) in the

parking lot, and many other incidents. *See* Dkt. No. 115-1. Defendant's admissions

that such violent crime is linked to prostitution and that prostitution was "more than

likely" occurring at Defendant's hotel, given the volume of stings and arrests prior

to Plaintiff's trafficking, make this evidence relevant—particularly when Defendant

*also* testified that it never once saw anything that would make it suspect prostitution, pimping, or sex trafficking. *See* Dkt. No. 183 at 2–3. So this evidence is also admissible to impeach that unbelievable testimony.

Moreover, courts in this district have found that "[p]rior incidents of prostitution are sufficiently similar to the crimes that caused Plaintiff's injuries—namely, keeping a place of prostitution, prostitution, pimping, and sexual servitude—to make the latter crimes foreseeable." *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1253 (N.D. Ga. 2023); *W.K. v. Red Roof Inns, Inc.*, 692 F. Supp. 3d 1366, 1382 (N.D. Ga. 2023). What is foreseeable is what a reasonable hotel operator should know (constructive knowledge) given the circumstances at its business. Here, Defendant's constructive knowledge is colored by the facts and criminal incidents that Defendant has admitted "more than likely" occurred at the hotel. And constructive knowledge is an element of both Plaintiff's TVPRA claim and the public-nuisance claim. *See* Dkt. No. 183 at 6, 8.

Evidence of other crimes is not inadmissible character evidence when it is not introduced for that purpose. Evidence of other crimes is relevant and admissible to prove identity, knowledge, participation, lack of mistake, pattern and practice, *modus operandi*, nuisance, and impeachment.

## III.    Defendant's MIL No. 3: Evidence Dated After Plaintiff's Alleged Traf-
ficking

Evidence of other crimes, trafficking, and incidents at Defendant's hotel after Plaintiff's sex trafficking is relevant and admissible for the reasons in the prior two sections and as further explained in Dkt. No. 183. Such evidence is admissible to prove identity, knowledge, participation, lack of mistake, pattern and practice, *modus operandi*, nuisance, and impeachment.

## IV.    Defendant's MIL No. 4: Unverified Guest Reviews of Super 8 Hotel

Plaintiff is not offering online reviews for the truth of the matter asserted. This evidence goes to Defendant's participation in a venture under the TVPRA and shows notice relevant to Plaintiff's public-nuisance and TVPRA claim. While Rule 404(b) excludes evidence of prior crimes, wrongs, or other acts "to prove a person's character to show that on a particular occasion the person acted in accordance with the character," such evidence may be admissible for other purposes. These purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Plaintiff offers these reviews for notice, knowledge, plan, absence of mistake, and lack of accident.

Defendant has agreed the reviews are authentic. It is unclear what Defendant means by its repeated use of "unverified," which is not an evidentiary standard. Regardless, evidence of guest reviews online is relevant and admissible *not* to prove

the truth of the matter asserted—something Plaintiff has never proffered them for—

but to prove notice to Defendant, who admitted that it read such reviews daily.

> Defendant tells the Court:

> Plaintiff cannot reasonably offer this evidence of unverified online re-
> views as statements that are not offered to prove the truth of the matter
> asserted (i.e., hearsay), but instead to prove notice, because there is no
> evidence that Defendant's employees were monitoring online reviews
> until 2016 . . . As such, the Defendant could not have notice of these
> reviews if there is no evidence confirming they [sic] its employees
> viewed these online reviews before or at the time of Plaintiff's incident.

Dkt. No. 184 at 13. This is false. The truth is that Defendant's manager and co-owner

testified that every day he reviewed online reviews from numerous sites, including

reviews about prostitution.

```
15    Q    Okay.  And because of that, is one of your
16  jobs as the owners -- as the owner since you've been
17  working there to always check reviews on Trip Advisor
18  or Yelp, Expedia, Hotel.com?
19    A    (The Witness)  Yes.
20    Q    Okay.  And do you do that once a day or
21  once a week?
22    A    (The Witness)  Every day.
23         THE INTERPRETER:  Every day.
24  BY MR. RICE:
25    Q    So every day you review Yelp, Travelocity,
                                                    Page 80
1   Expedia?
2     A    (The Witness)  Yes.
```

Dkt. No. 115-2 at 79:15–80:2.

```
5     Q    Fair to say there's at least 20 or 30
6   reviews where they reference that they suspected
7   there was drug dealing at the property, correct?
8     A    (The Witness)  Probably.
9          THE INTERPRETER:  Yeah, probably.
```

9

Dkt. No. 115-2 at 81:5–8.

> 14    Q    And is it fair to say you as someone with
> 15 no training at all in security before the shooting of
> 16 Mr. Felder read dozens of reviews with customers who
> 17 complained of prostitution, drug dealing, and
> 18 concerns for their personal safety?
> 19    A    Yes, I -- I read them.

Dkt. No. 115-2 at 84:14–19.

Defendant also admitted that it cannot tell the difference between sex trafficking and prostitution.

> 17    Q    And how would you, as the hotel, see signs
> 18 that they were different?
> 19    A    I -- I don't know.

Dkt. No. 115-5 at 76:17–19.

In sum, Defendant admitted that (1) its manager and co-owner read the reviews daily—and specifically read reviews complaining of prostitution; (2) Defendant cannot differentiate between prostitution and sex trafficking; and (3) prostitution "more than likely" occurred numerous times before Plaintiff's trafficking. Thus, the reviews should be admitted as proof of notice and knowledge about both sex trafficking and the public nuisance it created.

## V.    Defendant's MIL No. 5: Evidence of Plaintiff's Medical or Psychological Conditions Allegedly Resulting from Her Trafficking at the Super 8 Hotel

Defendant stretches too far here.[3] While no retained experts will testify at trial, that does not mean Plaintiff cannot testify about her experiences and challenges since being sex trafficked at Defendant's hotel. Plaintiff is not seeking to enter medical diagnoses regarding Plaintiff's injuries. And Plaintiff will not diagnose herself with specific medical conditions at trial. But Defendant goes much further and asks the Court to exclude Plaintiff's own testimony about *symptoms* of her injuries caused by Defendant. That is improper.

Instead, a "[p]laintiff may testify as to her own mental suffering and her lay opinion as to its cause." *Tindall v. H & S Homes, LLC*, No. 5:10-cv-44, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) (citing Fed. R. Evid. 701). This includes testimony that "she suffered 'depression.'" *Id.* The Eleventh Circuit has specifically upheld a plaintiff's ability to testify about her own depression and medical issues as distinct from one's "medical prognosis." *In re Mosley*, 494 F.3d 1320, 1326 (11th Cir. 2007) (allowing testimony "from personal knowledge about . . . his struggles with depression"). And the same is true of anxiety, as distinct from a medical event that requires expert testimony. *Scafidi v. B. Braun Medical, Inc.*, No. 8:22-cv-2772,

---

[3] Similarly to its MIL No. 10, implying that because there are no experts, witnesses cannot testify to their own observations and experiences.

2024 WL 382397, at *4 (M.D. Fla. Feb. 1, 2024) ("While [plaintiff] certainly may testify about any emotional anguish, anxiety, and depression she experienced after her termination, she may not testify that she suffered a stroke or 'stroke-like episode.'"). The law distinguishes between commonly understood descriptions of mental anguish and emotions and those that "present[] a technical and scientific issue that require[] specialized knowledge of an expert medical witness," such as "aneurysm" or a stroke. *Wingster v. Head*, 318 F. App'x 809, 815 (11th Cir. 2009) (aneurysm).

Under Rule 701, Plaintiff is qualified to describe her injuries up to the point where that testimony requires specialized medical knowledge. She may testify that she suffers depression and anxiety as well as use other commonly understood words to describe her emotional issues. Plaintiff will not diagnose herself with more specialized ailments such as PTSD.

## VI.    Defendant's MIL No. 6: Evidence or Argument Suggesting a Specific Amount of Damages to be Awarded

Defendant seeks to turn a discovery dispute into a trial advantage. This is the first time Defendant has raised an issue about any response to Defendant's interrogatories. The appropriate response if Defendant was unsatisfied with Plaintiff's answer was to meet and confer about it *two and a half years ago*, and, if necessary, file a motion to compel during discovery. Fed. R. Civ. P. 37; L.R. 37.1(B) (requiring motions to compel to be filed within the discovery period).

12

The case cited by Defendant is a business-dispute case. Here, Plaintiff seeks damages for physical, mental, and emotional injuries—not specific past medical expenses or lost wages. "Courts have recognized, in the context of [42 U.S.C. ] § 1983 actions, that emotional distress damages are, by their nature, not easily translated into a dollar amount. Consequently, the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value." *Wright v. City of Savannah*, No. 4:17-cv-195, 2021 WL 1603612, at *6 (S.D. Ga. Feb. 24, 2021), *report and recommendation adopted*, 2021 WL 1156625 (S.D. Ga. Mar. 26, 2021) (cleaned up).

Still, as this is the first time in two and half years that Defendant has informed Plaintiff it would like further information in response to its January 3, 2023 discovery requests, Plaintiff will supplement her discovery response to include this information: Plaintiff will seek at least $10,000,000.00 in compensatory damages. Thus, the Court should deny this motion in limine as moot.

## VII. Defendant's MIL No. 7: "Reptile" Statement or Arguments

Plaintiff's counsel has not read the book to which Defendant refers, so it is difficult for counsel to respond. In any event, Plaintiff's counsel does not intend to "appeal to the survival instincts of jurors"—however that is supposedly done. Dkt. No. 184 at 16.

Defendant's MIL has another problem: it is hopelessly vague, offering no way for Plaintiff's counsel to know what all it seeks to exclude. Still, Plaintiff opposes this MIL because it asks the Court to exclude evidence of a potentially essential element of Plaintiff's public-nuisance claim.

As explained in Plaintiff's MIL, Dkt. No. 183 at 8–9, Plaintiff can prove public nuisance in two ways. One is by proving that the hotel is a per se public nuisance. To do so, Plaintiff need not prove that the sex crimes at Defendant's hotel affected the surrounding community. But under common-law public nuisance, the elements include that the nuisance "invites 'idleness, loitering, vagrancy, and a tendency to breed crime and debauch the morals of the community' and has 'an appreciable blighting effect on the surrounding community.'" *E.M. v. Tucker Inn Inc.*, No. 1:22-cv-2559, 2024 WL 4005218, at *7 (N.D. Ga. July 15, 2024) (Ray, J.) (quoting *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 717 (2020) (*vacated on other grounds*)).

Defendant asks the Court to "prohibit statements or arguments (including during voir dire) which characterize sex trafficking, and/or Defendant Tucker Inn's alleged acts or omissions, as a threat or danger to the community or the public at large." Dkt. No. 184 at 17. Under the common-law path, Plaintiff's public nuisance claim *requires* Plaintiff to introduce evidence that Defendant's acts or omissions bred crime, debauched the morals of the community, and had an appreciable

blighting effect on the community. Thus, Defendant's MIL must be denied because evidence of an essential element of a public-nuisance claim cannot be improperly prejudicial. The Court should say that.

## VIII.  Defendant's MIL No. 8: Comments about Use of a Translator or Different Native Language

Plaintiff will not negatively comment on the use of a translator by any party or witness.

## IX.  Defendant's MIL No. 9: Undated Unauthenticated, and Irrelevant Physical Evidence

The strap-on dildo found on Defendant's property in broad daylight during a noticed site inspection is not unauthenticated, undated, or lacking foundation as Defendant states. Dkt. No. 184 at 18. Defendant *stipulated* that "The strap on dildo pictured in Exhibit A was found on Tucker Inn, Incorporated's property located at 1600 Crescent Centre Boulevard, Tucker, Georgia, 30085 on May 17, 2023, during Plaintiff's noticed site visit." Dkt. No. 76.

Defendant preserved its admissibility objections, but it cannot suggest that the item is not what it is (unauthenticated), was not found when it was found (undated), or requires a foundation to prove what it is and when and where it was found (lacking foundation). The stipulation resolves all that.

Plus, the dildo is relevant evidence. True, it is prejudicial—all adverse evidence is—but it is not unfairly so. Here, Defendant's manager and co-owner testified

that it is "more likely than not" that prostitution was occurring at its hotel—at least as to the twenty-four prior sex crimes there. But there is also evidence that Defendant (whose corporate deponent was that same manager) has never seen *anything* that made him suspect that prostitution, pimping, or sex trafficking has ever occurred on Defendant's property. Impeaching the vast gulf between that testimony is completely appropriate and proper in this case. *See* Dkt. No. 183 at 2–7.

Finding a strap-on dildo on Defendant's property is not conclusive evidence that prostitution, pimping, and sex trafficking are common and accepted occurrences on Defendant's property. But that is not the legal standard. What makes evidence relevant is if it "has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The fact that a large sex implement went unnoticed by Defendant at least on the day of a site visit related to two sex-trafficking cases is one piece of evidence from which a jury could conclude that Defendant creates a hospitable environment for sex crimes and criminals to occur, or at a minimum, is willfully blind to things that a reasonable hotelier would not be. That is the crux of Plaintiff's public nuisance claim. The evidence is also relevant to her TVPRA claim, pattern and practice, knowledge, and for impeachment. What this hotel permits to occur on its property is not normal, and this is evidence that the things the hotel permitted contributes to a blighting, harmful effect on the

surrounding community. And as noted in Dkt. No. 183 at 8–9, Plaintiff may also prove the *continuance* of the nuisance. Plaintiff has alleged all along that Defendant permitted this nuisance to continue through the present. The strap-on dildo Defendant stipulated was found on its property is evidence that Plaintiff is correct.

X.    **Defendant's MIL No. 10: Allegations of What the Hotel Should have Seen**

This is another confusingly broad request with no legal support, save for a conclusory reference to Rule 403. Defendant conflates two things here. That there is evidence of what the hotel should have seen at its hotel, and that in the abstract there exist industry standards about what a hotel should see. There are no experts in this case to talk about industry standards. But it is not expert material for a witness to testify that they saw Defendant's manager walking the property and monitoring the property and that at that time he would have seen what the witness saw. For example, about Defendant's manager, one witness who prostituted at Defendant's hotel for ten years, testified:

9  A.  But he's so used to doing everything
10  hisself. It's his hotel. You know, he knows how to
11  run it. He comes and checks the rooms and stuff. So
12  I can see that, yes, you're going to see multiple cars
13  coming in and out because you are walking around the
14  property.
15     And then again it depends on what type of
16  day it is. If it's at night, he's not working at
17  nighttime so he can't see the nighttime traffic. I
18  don't know if the cameras were working back then or
19  not how they are working today. So there's a lot of
20  different factors, but I can say, yes, he could see
21  the traffic.

Dkt. No. 130, 32:9-21

12     So there's no way that -- even though we
13  didn't physically see him standing there, but at times
14  he would be standing there, walking the parking lot,
15  picking up trash because that's what he does. He
16  cleans his property. He walks around his property.
17  So yes, you could say that he could see all this going
18  on.

Dkt. No. 130, 85:12–18

25  Q.  How do you know that he saw those

1  individual instances?
2  A.  Because he was there on the property
3  walking around looking for hisself if I'm at my door
4  on occasion, if I was standing at my door. I've had
5  so many room numbers. I can't tell you which room
6  number. And here comes Mr. Patel cleaning up trash,
7  looking up while somebody is getting weed at the door.
8  And he's seen this weed transaction going on, but he's
9  not saying anything. Because nine times out of ten
10  the drug dealers are paying more for that. Because
11  they do pay more.
12     I could be like, "Oh, my room ain't but
13  $70."
14     "Well, shit" -- excuse my language --
15  "he's charging me such-and-such and such-and-such
16  because, you know, I've got this going on." So
17  that -- you know, that is how it goes.

Dkt. No. 130, 86:25–87:17

Similarly, Defendant itself has testified that it can "see a lot of traffic going in and out of the room" in "one or two days."

> 11  Q.  When does continuous prostitution at a hotel
> 12  require that hotel to do something in response?
> 13      MR. HARRIS: Objection.
> 14  A.  Within the -- within one or two days, we can
> 15  find out.
>
> 23  A.  So if we rent -- if we have rented the room
> 24  and if we see a lot of traffic going in and out of the
> 25  room -- like a lot of men going in and out of the
>
> _____
>                                        Page 70
> 1   room -- you know, so then if we find that out, then we
> 2   would not rent them the room anymore.

Dkt. No. 115-5, 69:11–15; 69:23–70:2. So Defendant has testified that it *could* see this activity—but claims it never did—while numerous other witnesses say Defendant *did* see that activity because it was rampant.

Plaintiff is not going to introduce evidence that Defendant should have seen something *because* of an industry standard. Which, though confusing, is all that Defendant is raising here. The evidence of non-expert witnesses will show that Defendant should have seen something because it admitted it could see such activity and witnesses say that activity occurred in Defendant's presence. As there are no experts in this case, this motion in limine should be denied as moot.

## XI.    Defendant's MIL No. 11: References to Americas Best Value Inn

This MIL is nonsensical and is unsupported by law. Defendant owned the property and operated a hotel there with the same manager living on the property

since 2007. Despite Defendant's assertion that "potentially different rules or proce-dures" were involved, Defendant cannot point to any evidence to support that state-ment. Nor is the involvement of any franchisor at issue. In fact, Defendant's manager testified that the hotel changed brands precisely "[b]ecause we do not need this fran-chise stuff. That's why." Umesh Patel Felder Dep. 126:24–25.

There is no evidence that Defendant operated the hotel any differently under one name or the other. The only change in evidence is that Defendant added more security cameras in 2016 and thus could see the ongoing criminal activity even bet-ter. And still, Defendant testified it never called the police about prostitution or sex trafficking. No policies or procedures or requirements from franchisors are in evi-dence. Indeed, Defendant's testimony is that it has no written training at all, includ-ing for security or sex trafficking, even though Defendant believes it *should* have such a written policy.

```
23 Q.  Do you have any written training policies?
24 A.  No.
25 Q.  Do you have any written policy regarding sex
                                              Page 66
 1  trafficking?
 2 A.  No.
```

Dkt. No. 115-5, 65:23–66:2.

```
 8  Q.  Should a hotel have a written human
 9  trafficking policy?
10  A.  No.  We don't.
11  Q.  Should you have one?
12  A.  Are you asking that we should have it?
13  Q.  I'm asking if the hotel believes it should
14  have one.
15  A.  Well, I said yeah, they should have one.
```

Dkt. No. 115-5, 96:8–15.

This MIL is another attempt to exclude large swaths of other-incident evidence that Defendant knows proves it operates a nuisance property. Defendant's conduct in creating and maintaining an environment hospitable to criminals, including sex traffickers, is a major issue. The color of the signage and name of the hotel has nothing to do with Defendant's actions and misconduct.

Any concern about juror confusion can be addressed by a simple instruction or by testimony such as Defendant's own prior testimony that other than the name nothing else at the hotel changed:

```
16  Q    So in January of 2016 --
17  A    It became America Best Value Inn.
18  Q    Instead of Super 8?
19  A    That's right.
20  Q    Okay.  Other than the name did anything
21  else change?
22  A    No.
```

Dft's 30(b)(6) Dep. in *Felder v. Tucker Inn, Inc.* at 16:16–22.

The parties could also stipulate that the jury will hear reference to both names, which refer to the same property operated by Defendant. As recently as June 16, Defendant even proposed to Plaintiff a stipulation that said: "Until 2016,

Defendant's hotel was branded as a Super 8. After that, the hotel became an Americas Best Value Inn." But when the parties were conferring about stipulations, Defendant withdrew the second sentence because of this MIL.

This is not a confusing or prejudicial matter. Defendant always operated a hotel on the property. Franchisor involvement is not in evidence. The jury will have no trouble understanding this simple matter, and this MIL should be denied.

## XII.   Defendant's MIL No. 12: Third Party Statements in Police Reports

Plaintiff agrees that third-party statements in police reports *not* subject to a hearsay exception are inadmissible. Plaintiff will provide redacted versions of the police reports to Defendant before the pretrial conference to determine if there are disagreements about what should or should not be redacted. Even if the parties cannot agree, Plaintiff asks that the Court deal with this issue at trial as specific police reports are entered into evidence.

## XIII.  Defendant's MIL No. 13: Argument, Testimony, and Evidence Regarding Defendant's Financial Condition

Plaintiff agrees not to introduce evidence of Defendant's financial condition at trial. However, Defendant's financial "condition" is distinct from evidence showing the fact that Defendant rented rooms (including to Plaintiff's trafficker and other traffickers) and made a profit from doing so. That evidence is relevant and admissible for Plaintiff's TVPRA claim as well as to the issue of motive.

## CONCLUSION

Because Defendant's motions in limine are vastly overbroad and seek the exclusion of nearly all the evidence in this case, they should be denied except for motions in limine numbers 8 and 13, with which Plaintiff agrees.

Respectfully submitted June 24, 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile