UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

D.H.,

      Plaintiff,

v.

TUCKER INN INCORPORATED,
d/b/a SUPER 8 BY WYNDHAM,

      Defendant.

CIVIL ACTION FILE

NO. 1:22-CV-03419-JPB

**PLAINTIFF'S RESPONSE ABOUT THE UNCONSTITUTIONALITY
OF APPLYING GEORGIA'S APPORTIONMENT STATUTE**

Two weeks after the deadline to respond to D.H.'s motion in limine challenging the constitutionality of applying the Georgia apportionment statute to her public-nuisance claim and one week after the pretrial conference, Super 8 filed a 13-page brief nominally addressing the topic. This counsel has read briefs with more frivolity and less coherence, but none by a represented party come readily to mind. In any event, D.H.'s MIL should be granted in full.[1]

---

[1] This response (or reply or surreply or whatever the right term is for a brief that follows a brief that supplements, at the Court's invitation, a response brief that didn't respond to the motion's arguments and an oral argument that didn't do so either) doesn't discuss D.H.'s MIL on joint-and-several liability for purposes of the TVPRA except to say this: the day after the pretrial conference, Judge Geraghty held that TVPRA liability is joint and several, applying traditional common-law torts principles. Order at 2–5, *J.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5233 (N.D. Ga. July 2, 2025). This Court should do the same for the reasons in D.H.'s MIL.

## BACKGROUND

Some relevant background. On February 10, 2025, the Court reopened this case, which had been administratively closed while the parties attended Court-ordered mediation, and set February 25 as the deadline for the parties' consolidated pretrial order. Docs. 157, 160. The Court entered the pretrial order on February 27 and set this case for trial on May 19. Docs. 164, 165.

On March 19, the Court held a Zoom conference to discuss moving the trial and rightly agreed to do so after hearing from the parties. Docs. 168, 169. The trial's new date was July 22 (with a backup of July 21, if a jury became available, which it has, so trial starts the Monday after next). Doc. 169. In the Order resetting the trial, the Court also ordered the parties to file motions in limine and responses fourteen and seven days before the pretrial conference, respectively. *Id.* at 2. The Court provided that these motions would be taken up at the pretrial conference. *Id.*

Ignoring the Court's order, Super 8 chose not to respond to D.H.'s argument in her MIL about joint-and-several liability that applying the Georgia apportionment statute's May 2022 amendment to D.H.'s public-nuisance claim would be unconstitutional.[2] *Compare* Doc. 188 at 19–27, *with* Doc. 198 at 6–7. Indeed, as the Court

---

[2] On March 21, Super 8 filed its notice of intent to seek apportionment under O.C.G.A. § 51-12-33. Georgia law requires that apportionment notices be filed "not later than 120 days" before trial. § 51-12-33(d). So Super 8 blew the notice deadline for the *original* trial date by **61 days** and sniffed the deadline for the *new* July 21 date, squeezing its notice in two days before (and two days after the Court moved

astutely observed at the pretrial conference, Super 8's *entire* "argument" (using that word charitably) was a single, citationless sentence: "Despite Plaintiff's lengthy argument, the law is abundantly clear that apportionment applies to Plaintiff's state law nuisance claim which was filed after the revisions to the apportionment statute." Doc. 198 at 6.

The usual rule in this district is that "failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004), *aff'd*, 116 F. App'x 253 (11th Cir. 2004). And "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). Yet at the pretrial conference, the Court decided not to deem Super 8 to have abandoned its opposition to D.H.'s motion, which stood unopposed.

Instead, the Court devoted considerable time and attention to trying to understand Super 8's position. Yet despite repeated and pointed questions, Super 8's initial responses were sporadic and often inscrutable. Doc. 213, Hrg. Tr. 99:12–103:17.

---

the date). Put another way, if this trial started *any earlier* than July 21, Super 8's notice would be untimely, and this issue would be off the table. *See Monitronics Int'l, Inc. v. Veasley*, 746 S.E.2d 793, 803–04 (Ga. Ct. App. 2013) (finding strict compliance with 120-day deadline statutorily required even when trial date set within 120 days of notice's filing).

After requesting a break and changing counsel (with the Court's permission and without opposition from D.H.), Super 8 still couldn't muster a cogent response to the Court's questions or D.H.'s argument. *Id.* at 104:10–107:8. Eventually, Super 8 took the position that the General Assembly's 2022 amendment of the apportionment statute, O.C.G.A. § 51-12-33, was a "procedural" rather than "substantive" change in Georgia law. *Id.* at 102:1–5; 111:2–11. When the Court reasonably asked for support for this position, Super 8 shockingly had *none*. *Id.* at 102:6–24.

Now, the usual rule is that parties cannot take *new* positions after staking out (or not) their positions before the Court. That's true when parties try to raise new arguments for the first time

- on appeal, *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336 (11th Cir. 2017);

- in a reply brief on appeal, *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc);

- in a supplemental brief on appeal, *id.*;

- in a petition for rehearing on appeal, *id.*;

- on remand from the Supreme Court, *id.*;

- at oral argument on appeal, *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1263 (11th Cir. 2004);

- in a reply brief in support of a motion in the district court, *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1303 n.15 (N.D. Ga. 2020), *aff'd*, 11 F.4th 1227 (11th Cir. 2021);

- at oral argument on a motion in the district court, *Starbuck v. R.J.*

4

*Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018);

- in a motion for reconsideration under Local Rule 7.2(E), if arguments were previously available, *Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1370 (N.D. Ga. 2014);

- in a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), if arguments were previously available, *id.*; or

- in a motion for relief from the judgment under Federal Rule of Civil Procedure 60(b), if arguments were previously available, *Finnegan v. Comm'r*, 926 F.3d 1261, 1270 (11th Cir. 2019).

Yet without the one word of justification—much less permission—Super 8 uses the Court's request for supplemental briefing on D.H.'s constitutional challenge to applying the Georgia apportionment statute's 2022 amendment to her public-nuisance claim to do just that: raise *new* arguments not raised in its response or oral argument.

Anyway, Super 8 now claims that statutory apportionment is a "remedial right" in Georgia. Doc. 211 at 2. Super 8's about-face from its belated position at oral argument—statutory apportionment is "procedural" rather than "substantive," Doc. 213, Hrg. Tr. 102:1–5; 111:2–11, makes sense. Super 8's belated "procedural" position has no legal support. Of course, that means it was "frivolous." *See* O.C.G.A. § 9-11-68(e) (defining "frivolous claims" for which the jury can award "damages" posttrial). For most litigants, that revelation would end the matter. But not Super 8.

Rather than heed the rule of holes—if you're in one, stop digging[3]—Super 8

---

[3] *See* Modern Proverb No. 42, *The New Yale Book of Quotations* 562 (Fred R.

trades its shovel for a backhoe and digs both faster and deeper. As a result, Super 8 churns up one "frivolous claim" after another on page after page of its brief. By doing so, Super 8 hopes to distract D.H. and force her into refilling the gaping hole while the final days to trial tick down—the definition of "abusive litigation" under Georgia law. *See* O.C.G.A. § 51-7-81.

But D.H. won't be distracted or dissuaded from her twin goals of holding D.H. accountable for the harm she suffered from being sold for sex as a child at the Super 8 and seeing Super 8 punished and deterred by the imposition of punitive damages for its deplorable misconduct that perpetuated "a contemporary manifestation of slavery." *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466. Nor will she devote this response to refilling every clod of dirt Super 8 turned up in its brief. Instead, she spends this response on Super 8's major misrepresentations and misconceptions of Georgia law. D.H. begins by incorporating the relevant portion of her MIL about joint-and-several liability: Doc. 188 at 19–27.

---

Shapiro ed. 2021).

## RESPONSE

**I.    Super 8's claim that the Georgia apportionment statute is "remedial" is frivolous.**

### A.    Legal truisms strung together aren't an "argument."

Super 8 claims that statutory apportionment is a "remedial right." Doc. 211 at 2. To try to prop up this claim, Super 8 begins with a series of truisms. The first is that Georgia's apportionment statute doesn't provide "a separate right of action." Doc. 211 at 2. That's what the statute and caselaw says. *See Dist. Owners Ass'n, Inc. v. AMEC Envtl. & Infrastructure, Inc.*, 747 S.E.2d 10, 14 (Ga. Ct. App. 2013) ("[N]ot only did OCGA § 51-12-33 fail to create a cause of action for apportionment, it abrogated such actions under the common law.").

Super 8 follows this by noting that apportionment and contribution are "distinct," and contribution "is a substantive right." Doc. 211 at 2. And quoting a snippet of a 1971 Georgia Supreme Court decision, Super 8 adds that contribution has "the nature of an independent suit." Doc. 211 at 2 (quoting *Register v. Stone's Indep. Oil Distribs., Inc.*, 179 S.E.2d 68, 71 (Ga. 1971)). Of course, Super 8 failed to mention that it strip mined this quote from the part of the decision about how to characterize third-party complaints for contribution for purposes of applying Georgia's constitutional-venue protections. *See Register*, 179 S.E.2d at 70–71 (holding that Georgia Civil Practice Act didn't enable third-party complaint against joint tortfeasors for contribution doing so violated Georgia constitutional venue protections).

Super 8 finishes its truism paragraph by noting that Georgia courts have long upheld retroactive "remedial statutes" against constitutional challenges. Doc. 211 at 3. They have indeed.

A quick point about nomenclature before moving on. Some Georgia cases addressing the constitutionality of retroactively applying a legislative change include "remedial" as a category, and like "procedural" changes, these typically apply retroactively. But as the Eleventh Circuit helpfully summarized, Georgia's cases usually lump "remedial" statutes in with "procedural" statutes for "convenience."

> Georgia actually has two rules of statutory construction governing retroactivity, each designed to apply to separate types of statutes. The first rule prohibits a statute from being given a retroactive operation unless such construction is absolutely demanded. The second rule carves out an exception to the first rule for both procedural statutes and statutes that affect only a litigant's remedy. These statutes are deemed retroactive absent an expressed contrary intention. The Georgia courts, as a matter of convenience, refer to the statutes covered by the first rule as "substantive" and the statutes covered by the second rule as "procedural."

*Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1445 (11th Cir. 1991) (citation modified).[4] So "substantive" or "procedural" is the right question.

---

[4] Eight years after the "(cleaned up)" parenthetical started making the rounds, *see* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017), the *Bluebook* has seen fit to include a *new*, albeit not original, parenthetical: "(citation modified)," THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION B5.3, at 9 (Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025). Under B5.3, a quotation that includes another quotation "*may*, for clarity, be stripped of internal quotation marks, brackets, ellipses, internal citations, and footnote reference numbers"; plus, "the original sources

**B.    Super 8's claim that the apportionment statute is "remedial" has no basis in law or fact.**

After proffering these trivial truisms, Super 8 claims that "[t]he apportionment statute is considered remedial because it confirms a [p]laintiff's right to have a jury consider the fault of all persons liable for her harm"; plus, it "adds to the means of securing and enforcing the same because it permits an award of damages according to that assessment of liability." Doc. 211 at 3. Pure applesauce.[5]

For starters, apportionment is not a "right" that belongs to plaintiffs. It is a statutorily created affirmative defense that belongs to defendants—*as D.H. explained in her MIL on joint-and-several liability.* Doc. 188 at 20 (noting that accrual of D.H.'s cause of action vested Super 8 with its right to "statutory defenses, such as apportionment"). Does Super 8 deny that apportionment is an affirmative defense under Georgia law? Who knows? Regardless, Georgia law is clear: it is. *See Brown v. Tucker*, 788 S.E.2d 810, 821 (Ga. Ct. App. 2016) (Defendant's "apportionment claim was an affirmative defense."), *disapproved of on other grounds by Miller v.*

---

of quotations within the quotation need not be cited parenthetically; and capitalization may be changed without brackets." *Id.* (emphasis added). In exchange for all that, the author need only use the "(citation modified)" parenthetical.

This brief uses this new *Bluebook*-approved parenthetical. But because removal of internal "stuff" is permissive rather than mandatory, some internal marks (often quotation marks) have been left to improve clarity. All modifications by counsel are marked with brackets or ellipses.

[5] This phrase is borrowed from the late-Justice Antonin Scalia. *King v. Burwell*, 576 U.S. 473, 507 (2015) (Scalia, J., dissenting).

*Golden Peanut Co., LLC*, 891 S.E.2d 776 (Ga. 2023). Plus, Super 8 doesn't address this in its brief, so D.H.'s argument stands unopposed. And just to be clear: Georgia law treats "apportionment" as not only a "right" of defendants but also one that they can "waive." *KOS Ltd. v. Dockery*, 899 S.E.2d 796, 799–800 (Ga. Ct. App. 2024).

Next, Super 8's position is nonsensical. The common-law rule under Georgia is joint-and-several liability. *Cf. FDIC v. Loudermilk*, 826 S.E.2d 116, 129 (Ga. 2019) ("Georgia's apportionment statute, OCGA § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert."). Joint-and-several liability helps ensure that plaintiffs can recover the full amount of their damages.[6] Statutory apportionment abrogates the common law. *Loudermilk*, 826 S.E.2d at 129. So by saying that apportionment "adds to the means of securing and enforcing the same because it permits an award of damages according to that assessment of liability," Super 8 reveals that it doesn't understand apportionment or joint-and-several liability. Doc. 211 at 3.

After all, "the same" in Super 8's claim refers semantically to D.H.'s

---

[6] *See, e.g.*, *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1163 (11th Cir. 2024) ("The doctrine of joint and several liability does not require equal fault among all defendants. Joint and several liability was established through the common law . . . . It allows a claimant to recover all damages from one of multiple defendants even though that particular defendant may be the least responsible defendant in the cause. Joint and several liability's whole purpose is to treat the defendants as equally responsible, regardless of their fault." (citation modified)).

supposed "right to have a jury consider the fault of all persons liable for her harm." *Id.* How does that supposed "right"—which isn't D.H.'s but rather belongs to Super 8—help D.H. "add to the means of securing and enforcing" anything? The Court, like D.H., is left to guess. Super 8 never says. Nor could it do so. This nonsensical assertion—unsurprisingly made without citation—conflicts with Georgia law. The apportionment statute couldn't be clearer: "percentages of fault" assigned against "nonparties" are "used only in the determination of the percentage of fault of named parties." § 51-12-33(f)(1). These "findings of fault" not only "shall not subject any nonparty to liability in any action," nor may they "be introduced as evidence of liability in any action." § 51-12-33(f)(2). In short, apportionment *hurts* plaintiffs. Super 8's contrary position lacks any legal basis and thus is frivolous. *See* § 9-11-68(e).

Super 8's next claim is equally untethered from the law and reality. Super 8 says—once again citing *nothing*—that it "is not the case" that applying the apportionment statute would deprive D.H. of the "right to recover completely from a single defendant (assuming more than one proximate cause of her damages) in a case against a single defendant"—what D.H. argued. Doc. 211 at 3–4 (citation modified). Super 8 thinks this is true—for some unstated reason—because D.H.'s "right to file a TVPRA action is not affected, nor is her right to a cause of action for public nuisance." Doc. 211 at 4. According to Super 8, D.H. "is still permitted to seek damages against the [d]efendant[—]and other responsible parties[—]who are liable for her

11

harm, and even with apportionment of damages a jury could still find the [d]efendant was 'completely' at fault." Doc. 211 at 4. Super 8 thus concludes that "this argument" (using "argument" *more than* charitably[7]) somehow "further confirms that the only effect [presumably of apportionment, though it's unclear] is to the remedy, rather than [the] substantive right." Doc. 211 at 4.

Here, too, Super 8's claim blinks reality and reveals its fundamental misunderstanding of D.H.'s argument and Georgia law. *First*, D.H. *never* said that apportionment under Georgia law has any bearing on her "right to file a TVPRA action." *Contra* Doc. 211 at 4. Nor did she *ever* say that apportionment affects "her right to [file] a cause of action for public nuisance." *Contra* Doc. 211 at 4. So Super 8 isn't engaging with a "straw man" of D.H.'s argument but something more akin to a "hallow man"—"*a complete fabrication*" that "represents no particular discussant" and "bears no relation to any view expressed." Scott F. Aikin & John Casey, *Straw Men, Weak Men, and Hallow Men*, 25 Argumentation 87, 92 (2011).

*Second*, as explained above, Super 8's claim that D.H. can somehow seek damages from "other responsible parties" in her public-nuisance action against only Super 8 misstates Georgia law. Apportionment of fault to nonparties under Georgia law doesn't bind the nonparties. *See supra* pp. 10–11. Were D.H. to claim that she

---

[7] *See Argument*, Merrian–Webster's Dictionary Online ("a coherent series of reasons, statements, or facts intended to support or establish a point of view").

can collect from nonparties apportioned fault by the jury, she'd be laughed out of court. That claim is no less laughable coming from Super 8. And because this anomalous view it contravenes Georgia law, it is frivolous. *See* § 9-11-68(e).

*Third*, that the jury "could" find Super 8 "completely a fault," Doc. 211 at 4, does not affect whether D.H. has a vested right to prevent the jury from considering this question. D.H. argued that she did in her MIL on joint-and-several liability. Doc. 188 at 23. Despite having *three* opportunities to respond, Super 8 hasn't been able to unearth anything that contradicts that argument. D.H.'s argument *remains* unopposed, and Super 8 has waived any opposing argument.

## C.    Supremacy and malicious falsehoods.

On pages 4 to 7, Super 8 takes a break from claiming without support that apportionment is a "remedial right" to respond, for the first time, to D.H.'s short argument in her MIL on joint-and-several liability about how the U.S. Constitution's Supremacy Clause bars the application of Georgia's apportionment statute. *See* Doc. 188 at 17–19. While applying joint-and-several liability (under the TVPRA) and apportionment (under Georgia law) to D.H.'s *single* damages award for both claims would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013), this argument is only necessary if the Court upholds the retroactive application of the 2022 apportionment amendment. So rather

13

than respond more, D.H. stands on her MIL arguments and will address this issue more should the Court have questions. (The Court asked no questions about this argument at the pretrial conference. Doc. 213, Hrg. Tr. 106:6–111:16.)

That said, Super 8 made two claims that warrant a response. The first claim misunderstands *W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-5263, 2024 WL 2892322 (N.D. Ga. June 10, 2024).[8] Despite what Super 8 says, Judge Calvert did not decide that both joint-and-several liability for TVPRA (and Georgia RICO) and apportionment for negligence would apply to each of the eleven plaintiffs' damages. Rather, Judge Calvert merely decided to instruct the jury that it could apportion fault for the negligence claims while applying joint-and-several liability to the other claims. *Id.* at *4. She did not decide that the single damages award for each plaintiff's injuries could be *both* joint and several *as well as* apportioned. Here, judgment for the full damages amount has to be entered if the jury finds Super 8 liable for D.H.'s single damages amount under both the TVPRA and Georgia public-nuisance law. That's

---

[8] At oral argument, Super 8 head faked toward an argument that *W.K.*'s ruling signaling that the jury would be instructed to apportion damages for the Georgia negligence claims somehow undercut D.H.'s constitutional challenge here. *See* Doc. 213, Hrg. Tr. 105:4 –24. But there are two problems with that view. *One.* There were multiple defendants in *W.K.*—even at the time of trial—so *W.K.* fit better (but not perfectly, for reasons unnecessary to raise) the text of the 2005 version of § 51-12-33(b). *See* 2024 WL 28892322, at *1 (case style). *Two.* The plaintiffs in *W.K.* filed their suit *before* the 2022 amendment. So they couldn't argue that the amendment's retroactive application was unconstitutional—not at least without courting sanctions. *Cf.* Fed. R. Civ. P. 11(c).

D.H.'s Supremacy point.[9]

The second claim is patently false. Super 8 says that "the cases cited" in D.H.'s MIL "refer specifically to cases in which unconstitutionality was considered when a [p]laintiff's right to a *cause of action* was affected, which is not the same circumstances in this case." Doc. 211 at 4–5. Though unclear from Super 8's brief, it appears that Super 8 then tried to substantiate this statement by citing three (of the 20 or so) cases cited in the constitutionality-challenge section of D.H.'s MIL.[10] *See id.* Whatever their purposes, Super 8's statement couldn't be more wrong.

The first two cited cases Super 8 cherry-picked, D.H. used to support her mainstream view that "causes of action are species of property under either [the Georgia or U.S.] Constitution" and thus protected by their Due Process Clauses from retroactive application of laws impairing vested rights. *See* Doc. 188 at 21–22. Indeed, even Super 8 agrees that the Georgia "Constitution's prohibition against retroactive laws applies to [a] law which affects or impairs substantive rights that have vested." Doc. 211 at 8. Of course, these were hardly the only cases D.H. cited—or discussed—in her brief.

---

[9] Part IV of Judge Calvert's order has several substantial errors. But because the case settled before they were raised, she never had the chance to reconsider. Regardless, this is not the time or place to litigate those errors.

[10] This counsel can conjure no other reasonable explanation for their citation at this point in Super 8's brief.

In fact, D.H. specifically discussed "three examples" in which "Georgia courts have held that other statutory changes with similar effects [to the 2022 apportionment amendment] were substantive and thus could not constitutionally apply retroactively." Doc. 188 at 24. Those cases were (1) *Fowler Properties, Inc. v. Dowland*, 646 S.E.2d 197 (Ga. 2007); (2) *Polito v. Holland*, 365 S.E.2d 273 (Ga. 1988); and (3) *Brown v. Hauser*, 292 S.E.2d 1 (Ga. 1982). *See* Doc. 188 at 24–26. Yet Super 8 didn't bother to mention them. Why not? The answer is that *Fowler Properties* and *Polito* have nothing to do with "a [p]laintiff's right to a *cause of action*." *Contra* Doc. 211 at 5. So they prove that Super 8's statement lacks a substantial factual basis and is blatantly untrue. And *Brown* proves that not only were D.H.'s substantive rights (and those of Super 8) fixed when D.H.'s cause of action accrued but also that accrual is the constitutionally salient time for retroactivity purposes, not when she filed suit.

Together, *Fowler Properties* and *Polito* are nearly fatal to Super 8's position. *Fowler Properties* deals with the offer-of-settlement statute that the General Assembly expressly intended to apply retroactively (meaning to all cases regardless of when the cause of action accrued). *Fowler Properties* held that statute's retroactive application was unconstitutional because "the statute operates as a substantive law." 646 S.E.2d at 200. That is, it "does not merely prescribe the methods of enforcing rights and obligations, but rather affects the rights of parties by imposing an

additional duty and obligation to pay an opposing party's attorney fees when a final judgment does not meet a certain amount or is one of no liability." *Id. Fowler Properties* makes clear that changes to the amount of money one side or the other might have to pay is a "substantive" change. *Id.*

*Fowler Properties* also easily dispatched the defendant's "argument" for upholding the statute given the General Assembly's explicit "retroactive" intent. For as the Georgia Supreme Court held, "the legislature may not enact a statute to apply retrospectively in violation of our constitutional provision barring retroactive laws." *Id.* (citation modified). *Fowler Properties* thus teaches that Super 8's emphasis on the explicit text of the 2022 apportionment amendment *cannot* make this retroactive, substantive change in the law constitutional. *Contra* Doc. 211 at 8–9 & n.1.

*Polito* undercuts Super 8's claim that apportionment is "remedial" because that case dealt with statute that made certain evidence of collateral-source benefits admissible, thereby making it possible for the jury to reduce the plaintiff's damages based on it. The Georgia Supreme Court held that this "works a substantive change in the law governing collateral benefits" and thus had to be "given prospective effect only." *Polito v. Holland*, 365 S.E.2d 273, 275 (Ga. 1988).[11]

---

[11] The Georgia Supreme Court later held that this statutory change regarding the admissibility of collateral-benefits evidence was unconstitutional in tort cases. *See Denton v. Con-Way S. Express, Inc.*, 402 S.E.2d 269, 270–71 (Ga. 1991).

*Brown*, D.H.'s third example, buries Super 8's claim that apportionment is "remedial." *Brown* specifically held that the accrual of a cause of action is when rights vest, not when the case is filed. There, the General Assembly *completely* repealed Brown's statutory cause of action *before* he filed suit and thus eliminated his right to any damages. Even so, the Georgia Supreme Court held that Brown could still pursue his claim and recover his full damages because his cause of action accrued before the repeal. *Brown v. Hauser*, 292 S.E.2d 1, 2 (Ga. 1982). Sure, in one sense, *Brown* is about whether the plaintiff can bring a cause of action that had accrued but had not yet been filed. But the availability of a cause of action is only significant because of the damages or other relief it affords the plaintiff.

Again, Super 8 doesn't mention *Fowler Properties*, *Polito*, and *Brown* at all. So D.H.'s argument that they prove that the 2022 apportionment amendment is a substantive change in the law that cannot be retroactively applied to her public-nuisance claim that arose *years* before the 2022 amendment *remain* unopposed and unrebutted. Perhaps most shocking, unlike D.H. who offered "three examples" of statutory changes that were "substantive" and thus unconstitutional when applied retroactively, Super 8 doesn't provide even one example of a "remedial" change that can constitutionally apply retroactively.

Finally, the third cited case Super 8 includes is *Glover v. Colbert*, 437 S.E.2d 363 (Ga. Ct. App. 1993). Super 8 describes it in a parenthetical this way: "deciding

the issue of a statute which was repealed during the pendency of the action, *and thus, affected vested rights to bring such a cause of action*." Doc. 211 at 5 (emphasis added). That emphasized part is false. The truth is that *Glover* supports D.H.'s argument that the General Assembly's 2022 apportionment amendment is substantive rather than procedural (or remedial).

Here's what happened in *Glover*. After being injured in a car wreck, the plaintiff (Glover) sued the defendant (Colbert). A jury found for the plaintiff and awarded $5,000. After the wreck, the plaintiff got $2,500 from her insurance policy's then-mandatory coverage for no-fault medical expenses. Following the trial, the trial court reduced the verdict by that amount and entered judgment for $2,500. The trial court made this $2,500 reduction under the former O.C.G.A. § 33-34-9(b), which was repealed effective October 1991—after the wreck and while the case was pending. The trial court, in other words, applied the substantive damages law as it was when the wreck occurred despite the intervening legislative repeal. 437 S.E.2d at 666–67.

Best this counsel can tell, the General Assembly added the former § 33-34-9(b) in 1987. Georgia Motor Vehicle Accident Reparations Act, 1987 Ga. Laws 1433, 1434. Before that 1987 enactment, the general rule was that tortfeasors couldn't diminish the damages they owed by the payments the plaintiff received from a third party that wasn't a joint tortfeasor where those payments were on account of a contract between the plaintiff and third party; nor did these payments

violate the general law of torts against double recovery. 437 S.E.2d at 669. That 1987 enactment changing this general rule, the Court of Appeals held, "gave the *tortfeasor* a statutory right which became fixed at the time of the collision." *Id.* (emphasis added). As a result, the plaintiff was not entitled to benefit from the change in the law that would increase the damages she could recover from the defendant. *Id.*

Despite what Super 8 told the Court, *Glover* was not about how a statutory change during a case "*affected vested rights to bring such a cause of action*." *Contra* Doc. 211 at 5. Rather, *Glover* shows that when the General Assembly makes changes that affect Georgia damages law—whether benefiting plaintiffs (as in *Glover*) or benefiting defendants (as in *Polito*)—those changes are substantive and thus cannot apply retroactively to causes of actions that had accrued, regardless of whether the case was pending when the change took place.

Super 8's flagrant misrepresentation of D.H.'s argument and the cases she cited as well as its complete misstatement of Georgia law and the holding in *Glover* are the epitome of frivolity. Super 8's brief justifies an award of damages under Georgia law; sanctions under Rule 11; and attorney's fees and litigation expenses under federal law. *See* § 9-11-68(e); Fed. R. Civ. P. 11(c); 28 U.S.C. § 1927.

### D.    Public versus private rights.

Super 8 devotes a single paragraph to the position that D.H.'s claim for public nuisance asserts a "public right" rather than a "private right." Doc. 211 at 7. While

Georgia law does distinguish between "public rights" and "private rights," *see Deal v. Coleman*, 751 S.E.2d 337, 345–47 (Ga. 2013), D.H.'s public-nuisance claim does not assert a "public right." What's more, today, members of the general public cannot file suit to vindicate their "public right" to be free of a public nuisance under Georgia law. But D.H. can. That's because the General Assembly has, since at least 1863, given individuals who suffer "special damage" from a public nuisance a "right of action."[12] Thus, D.H.'s suit is not to vindicate a "public right"—such as the Open Records right in *Deal* that didn't give an aggrieved member of the public the right to sue for damages, *see* 751 S.E.2d at 347–48—but rather to vindicate her "private right" to a cause of action and damages for the "special damage" Super 8's public nuisance inflicted on her.

### E.    Accrual of D.H.'s cause of action.

D.H. argued in her MIL that her cause of action for public nuisance accrued in September 2015 when she was sold for sex as a child at the Super 8. Despite three opportunities to respond to that argument, Super 8 hasn't. But it did at one point

---

[12] In Georgia's first Code, the General Assembly created "a right of action" for a "public nuisance" that causes "special damage to an individual" in that individual. Code of 1863, § 2940; *id.* § 2939 (defining "public nuisance" as "one which damages all persons who come within the sphere of its operations, though it may vary in its effects on individuals"); *see also* O.C.G.A. §§ 41-1-3 (providing "a right of action" for "public nuisance" causing "special damage to an individual"), 41-1-2 (defining "public nuisance" as in the Code of 1863).

"[a]ssum[e]" that D.H. was right. Doc. 211 at 11. By failing to respond, Super 8 conceded when D.H.'s claim accrued.

## II.    Super 8's remaining claims are frivolous or incoherent.

### A.    The meaning of the apportionment statute has nothing to do with whether apportionment is substantive or procedural.

Super 8 attempts to make much of the Georgia Court of Appeals' en banc decision in *AU Medical Center, Inc. v. Dale*, 908 S.E.2d 790 (Ga. Ct. App. 2024). That case is about the meaning of the 2005 version of the apportionment statute. The basic question is whether the apportionment statute applies when an action is filed against more than one defendant but by the time of trial the number of defendants has dwindled to one. *Id.* at 791–92. The Court of Appeals held that it doesn't apply in that situation. *See id.* at 792–98.

While *Dale* is interesting from a statutory-interpretation perspective, it has nothing to do with whether the 2022 amendment to the apportionment statute is "substantive" or "procedural" (or "remedial"). What the apportionment statute *means* and thus when it *applies* based on its statutory text has nothing to do with rights that plaintiffs or defendants have with respect to its application (or not) that exists when the plaintiff's cause of action accrues. Super 8's contrary claim is incoherent *at best* and contrary to Georgia law *at worst*.

For example, Super 8 says (citing *nothing*, as usual) that "Plaintiff's argument that the right to apportion did not exist at the time her cause of action accrued in

September . . . 2015 is unmoving because Georgia law applies the apportionment statute at the time of trial." Doc. 211 at 10. That claim doesn't follow from *Dale*. If anything, *Dale* teaches that D.H. had several ways to avoid the apportionment statute's application when her cause of action accrued, including suing only Super 8 (as she did) or suing many defendants and dropping all but Super 8 before trial. Those were her statutory rights that the General Assembly had given her when her cause of action accrued. And having given her statutory rights, the General Assembly cannot take them away by future changes to the substantive law.

### B.    Statutes mean what they mean regardless of whether anyone recognizes what they mean.

Super 8's final argument—that somehow § 51-12-33(b) meant something different in 2015, when D.H.'s cause of action accrued, before the Georgia Supreme Court decided *Alston & Bird, LLP v. Hatcher Management Holdings, LLC*, 862 S.E.2d 295 (Ga. 2021)—is brazen. *See* Doc. 211 at 11–13. According to Super 8, the fact that Georgia Supreme Court upheld apportionment in a case involving a single defendant in 2015 means that in 2015 the Georgia apportionment statute applied to single-defendant cases. Doc. 211 at 11.

Given this position, one would be forgiven for thinking Super 8 hasn't read *Alston & Bird* closely. There, the Georgia Supreme Court addressed Super 8's claim head-on, emphasizing that while the Court had decided a single-defendant case, *Zaldivar v. Prickett*, 774 S.E.2d 688 (Ga. 2015), "the question of whether" applying the

apportionment statute "was proper" was "expressly left open." 862 S.E.2d at 297.

*Alston & Bird* went further, ripping Super 8's claim out by the root in the process. The Court was emphatic: "none of the case cited by A&B actually decided the issue before" the Court, so "they do not help A&B." *Id.* at 300. For support, *Alston & Bird* cited one of myriad cases that make clear the scope of appellate holdings:

> Decisions of this Court do not stand for point that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Id.* at 300 (citation modified) (citing with quote in parenthetical *Palmer v. Georgia*, 651 S.E.2d 86, 88 (Ga. 2007)). That basic principle of appellate jurisprudence goes back at least 100 years. *Webster v. Fall,* 266 U.S. 507, 511 (1925).

Because the case A&B cited couldn't help it in *Alston & Bird*, they can't help Super 8 here. The inescapable fact is that the 2005 version of the apportionment statute means what it says—and always had. Pretending otherwise contradicts Georgia law and is frivolous.

## III.  Whether liability is joint and several or can be apportioned is essential to Georgia's damages law, and damages are substantive.

Whether joint-and-several liability and apportionment are part of Georgia's substantive law (or simply "substantive" in general) seems so well understood that nearly no one questions this fact. Even so, D.H. closes by pointing out a few cases that have addressed this question or a similar one—even if in passing.

24

Two binding circuit cases—one from the former Fifth Circuit and one from the Eleventh Circuit—confirm that apportionment is "substantive" Georgia law.

In *Gates v. L.G. DeWitt, Inc.*, the former Fifth Circuit considered whether a defendant's argument that the judgment against him should have been only for 3% of the total damages, since that was the percentage of fault the jury assigned to him, was rejected. 528 F.2d 405, 413 (5th Cir. 1976).[13] The former Fifth Circuit held that state law controlled the question of "apportionment of damages among joint tort-feasors" and that "Georgia law [at the time] follows the common law rule of no apportionment (with exceptions not material)." *Id.* That common law rule of joint-and-several liability (i.e., "no apportionment") applied even though Federal Rule of Civil Procedure 20(a) allows a judgment to "be entered against one or more defendants according to their respective liabilities." *Id.* That's because, the former Fifth Circuit held, Rule 20 "is a procedural rule based on convenience. It does not affect principles of *substantive state law* on the basis of which the respective liabilities of the defendants are determined." *Id.* (citation modified).

Then in *Stuckey v. Northern Propane Gas Co.*, the Eleventh Circuit considered whether a district court could correct a verdict initially apportioned but that the district court determined should have been joint and several. 874 F.2d 1563 (11th

---

[13] The opinion was later corrected to reflect the correct about of the judgment. 532 F.2d 1052 (5th Cir. 1976)

Cir. 1989). There, the Eleventh Circuit held that "Georgia law governs the type of liability a federal court imposes on a civil defendant in a diversity case." *Id.* at 1571–72. After noting that the district court had "conformed the verdict to make it consistent with *Georgia substantive law on joint and several liability*," the Eleventh Circuit held that "federal law governs the propriety of the district court's decision to correct the verdict rather than to order a new trial." *Id.* at 1572 (emphasis added) (collecting cases).

Finally, and more recently, there is *United Parcel Serv. of Am., Inc. v. Whitlock*, 883 S.E.2d 556 (Ga. Ct. App. 2023). That case concerns the application of Georgia's traditional choice-of-law rules to the law governing the "availability of punitive damages and the apportionment of fault." *Id.* at 561. On the first question, the Court of Appeals rejected the defendant's argument that "punitive damages are procedural in nature," concluding that "punitive damages involve substantive law." *Id.* at 564. Turning to the question of apportionment, the Court of Appeals noted that "[t]he defendants do not assert that the apportionment statutes are procedural rather than substantive." *Id.* at 565. In other words, while the defendants could muster a colorable argument that punitive damages were "procedural" (even though they are not), they knew better than to even try that with "apportionment." Super 8 should have too.

## CONCLUSION

The Court should grant D.H.'s MIL on joint-and-several liability in full, holding that liability under the TVPRA is joint and several and holding that it is also joint and several for her public-nuisance claim because applying the 2022 amendment retroactively would be unconstitutional.

Respectfully submitted on July 11, 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile